UNITED MOTOR COACH CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 32603. Filed June 17, 1954.

*John E. Cornyn, C. P. A.*, for the petitioner.
*David H. Nelson, Esq.*, for the respondent.

#### OPINION.

KERN, *Judge:* On August 28, 1953, respondent filed a motion for judgment on the pleadings on the ground that the facts stated in the petition are insufficient at law to establish petitioner's right to relief under Internal Revenue Code section 722. The motion for judgment was accompanied by a memorandum of authorities, hearing was duly had upon the motion, and the respective parties have submitted their briefs.

An amended petition was filed by petitioner prior to the hearing and on September 11, 1953, which respondent contends is subject to the same infirmities as the original petition.

Petitioner asserts that it is entitled to relief under section 722 (b) (1) or section 722 (b) (2), which provide as follows:

SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

(1) in one or more taxable years in the base period normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during the base period, of events unusual and peculiar in the experience of such taxpayer.

(2) the business of the taxpayer was depressed in the base period because of temporary economic circumstances unusual in the case of such taxpayer or

because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry,

The amended petition alleges that petitioner was incorporated in Illinois on November 13, 1926, and since that time has continuously engaged in operations as a motor carrier of passengers under the jurisdiction of the Illinois Commerce Commission; that its business was depressed during the base period because of the occurrence of events which were unusual and peculiar in the experience of petitioner, and which caused interruptions and diminutions in its operations during the base period, in that on July 27, 1933, and on July 24, 1934, the Illinois Commerce Commission entered orders directing Chicago Railways Company to install gas motor bus service over routes theretofore exclusively served by petitioner's gas motor bus service; that both petitioner and the Chicago Railways Company protested these orders; that in 1935 the Circuit Court of Cook County upheld by decree the orders of the Illinois Commerce Commission and Chicago Railways commenced the operations on April 21, 1935; that on February 14, 1936, the Supreme Court of Illinois (362 Ill. 559, 568) rendered a decision upholding the Illinois Commission, rehearing being denied April 10, 1936; that because the Illinois Commerce Commission did not find as facts that petitioner's service over the two routes was inadequate or the fares excessive, but proceeded to order another carrier, which was not requesting permission to operate a competing service, to render such service, the "usurpation" of petitioner's routes by another carrier was an event unusual and peculiar in the experience of petitioner, causing a substantial reduction in the gross revenues of petitioner during the base years; that because petitioner was a regulated motor carrier of passengers, it was not free to alter the nature of its business to replace this loss; that it could not extend its services on other routes within its general territory without the presence of substantial traffic and the authorization of the Illinois Commerce Commission; that petitioner's position is not that of a manufacturing or mercantile enterprise, which, on the loss of part of its business, can adjust its operations to handle other business; and that, because of these actions of the Illinois Commerce Commission, petitioner's base period net income was depressed to a lower level than during the 4 preceding years which were years of severe economic depression, and that petitioner's base period operations did not permit of normal earnings, and that such base period earnings were not a fair and just standard of petitioner's normal earnings.

Respondent's initial argument is that the "unusual and peculiar" events, referred to by Internal Revenue Code section 722 (b) (1), are only those in the nature of physical occurrences, such as floods, fires, explosions, etc., and that no such event is present in thec ase at bar.

Respondent's own regulations (Regs. 112, sec. 35.722–3 (a)) contain no such exclusively restricted interpretation of the scope of section 722 (b) (1). These regulations provide that the "unusual and peculiar events contemplated *·* * [in this section] consist *primarily* of physical rather than economic events or circumstances." (Emphasis supplied.) And this Court has not yet held, nor do we decide here, that events other than physical events might not satisfy the statute. See *Southern California Edison Co.*, 19 T. C. 935, 981, and *Pelton & Crane Co.*, 20 T. C. 967.

Respondent's case, however, goes further in that he contends that the alleged section 722 (b) (1) "event" relied upon by petitioner (the competing service on two routes of petitioner directed by the Illinois Commerce Commission) was not "unusual and peculiar" and that it did not interrupt or diminish petitioner's normal operations.

Respondent urges that petitioner was under the jurisdiction of the Illinois Commerce Commission, and it was contemplated and usual that it would regulate petitioner; that the fact that the Illinois Commerce Commission had never before issued orders such as those here in question does not denominate them as "unusual and peculiar"; that the power was there, and, according to the Illinois courts, was validly exercised.

In *Del Mar Turf Club*, 16 T. C. 749, 763, 764, we indicated that the valid exercise of a governmental regulatory power would not be regarded as "unusual" in dealing with section 722 (b) (2).

In *Acme Breweries*, 14 T. C. 1034, 1052, 1053, peacetime national prohibition, pursuant to the 18th Amendment and Congressional enactments, was held not to be an "unusual" event within the meaning of section 722 (b) (2).

While it is to be noted that paragraph (1) of subsection (b) speaks of "events unusual and peculiar," and paragraph (2) speaks of "circumstances unusual," we do not believe that the word "unusual" has any different connotation in the two paragraphs, and the fact that paragraph (1) calls for the additional characterization of the event as "peculiar" can not effect a diminution of petitioner's burden. See *Southern California Edison Co., supra*, p. 981. In order to qualify for relief under section 722 (b) (1) it is necessary for the taxpayer to prove events which were both unusual and peculiar in the experience of the taxpayer; while under section 722 (b) (2) it is necessary to prove events unusual in the case of taxpayer's industry. Under both subsections "unusual" events must be proved. In this case petitioner was subject to the regulatory power of the Illinois Commerce Commission. The Illinois courts have upheld the validity of the orders of the Illinois Commerce Commission, and, although the two specific instances here involved might well be the only exercise of this power, insofar as petitioner is concerned, we do not believe

that this fact would establish that the event was "unusual." Where a regulatory power exists, any valid exercise of it must be regarded as usual. Cf. *Kornhauser* v. *United States*, 276 U. S. 145, and *Deputy* v. *du Pont*, 308 U. S. 488.

Assuming without deciding that the events alleged in the petition were "economic" within the meaning of section 722 (b) (2), see *Norfolk & Chesapeake Coal Co.*, 18 T. C. 904, 914, petitioner, in order to prevail under that section, would, in addition, be required to establish that the events alleged were temporary. The order of the Illinois Commerce Commission did not purport to be temporary, nor has it, in fact, proved to be. Petitioner would compare its case to that of *Southern California Edison Co.*, *supra*, but it is clear that that case was dealing with the situation which was temporary in that within a few years, as contemplated by the preconceived arrangement, the taxpayer there would have recovered a block of customers to replace those whom it lost. In the case at bar, by petitioner's own allegations, "it was not free to alter the nature of its business to replace the business lost by the usurpation of its exclusive operating rights on its two principal routes," and "could not extend its service on other routes within its general territory served unless substantial traffic existed therein, and in no case without the specific authorization of the Illinois Commerce Commission." Nothing in the pleadings indicates that any such extension of service was ever contemplated or requested. While it appears, from the exhibits attached to the petition, that there was an increase during the latter part of the base period in the number of passengers carried by petitioner over the number carried in the first year of the base period, that increase was due primarily to the extraordinary rate of increase during this period in the population of the area served by the petitioner, and was not due to any alteration in the nature of its business or any extension of its service on other routes since none was made or even contemplated.

Respondent's motion for judgment on the pleadings must be granted, and a decision will be entered accordingly.

Reviewed by the Special Division.