FULTON FOUNDRY & MACHINE CO., INC., PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52687.    Filed August 28, 1956.

*James C. Herndon, Esq.*, and *Robert E. Sheck, Esq.*, for the
petitioner.

*James F. Kennedy, Jr., Esq.*, for the respondent.

954

## OPINION.

OPPER, *Judge:* Petitioner makes no claim that its base period income failed to reflect the normal operation of its business because of a change in the character of the business. It could not do this in any case because in order to avoid "subjective judgments" subsection (b) (4) of the predecessor section 722 was purposely and specifically removed from the relief afforded by the 1950 amendments:

The provision of relief in cases involving changes in management or operation has been eliminated for several reasons. Such changes do not of themselves prove that the character of the business has altered. A determination of that nature proved extremely difficult under the prior law and involved the very type of subjective judgments which your committee is convinced should be avoided in

the new law. * * * [H. Rept. No. 3142, 81st Cong., 2d Sess. (1950) ; 1951–1 C. B. 200.]

It is petitioner's contention that its situation falls within the provisions [1] of section 442 (a) (1), Internal Revenue Code of 1939, in that, during 1947, one of its base period years, "normal production, output, or operation was interrupted or diminished because of the occurrence * * * during such taxable year, of events unusual and peculiar in the experience of such taxpayer." Petitioner's installation of labor-saving machinery and the consequent disruption of its physical plant is the specific event relied upon.

The parties appear to be in agreement that section 722 (b) (1), and hence the present section which is its counterpart,[2] was intended to refer to physical as opposed to economic events which are governed by subsection (b) (2). See, e. g., *Southern California Edison Co.*, 19 T. C. 935; *Matheson Co.*, 16 T. C. 478. We may likewise assume for purposes of this discussion, although respondent is in vigorous disagreement, that a physical act such as the installation of new machinery, which is the consequence of a decision of management rather than of an external force, is nevertheless included in the events covered by subsection (1).

The difficulty is that both in its earlier form and under the present language "normal production" must be "interrupted or diminished" for the statute to authorize relief. These words refer not to profits but to physical operations. That is, when the statute speaks of "production, output, or operation," it is using terms which are meant to apply to the physical output of the enterprise rather than its managerial or economic operations. As the committee report shows, the concept of changes in "management or operation" as distinguished from physical output was done away with by the elimination of subsection (b) (4). Use of the term "operation" in conjunction with "production" and "output" was presumably intended to include such enterprises as retail business where there is no actual production or output in the usual sense. This construction is fortified by the juxtaposition of the words "interrupted or diminished" which would not seem to be appropriate to describe, for example, merely an increase in

---

[1] SEC. 442. AVERAGE BASE PERIOD NET INCOME—ABNORMALITIES DURING BASE PERIOD.

(a) IN GENERAL.—If a taxpayer which commenced business on or before the first day of its base period establishes that, for any taxable year within, or beginning or ending within, its base period:

(1) normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during such taxable year, of events unusual and peculiar in the experience of such taxpayer * * *

[2] "Corresponding in scope generally to section 722 (b) (1) and (2) of the prior excess profits tax law, section 442 is a relief measure which provides a means for adjusting certain abnormalities in the taxpayer's net income for a base period year or years." (H. Rept. No. 3142, 81st Cong., 2d Sess. (1950) ; 1951–1 C. B. 198,224.)

costs or a decrease in net profits. "It is to be noted that section 722 (b) (1) is concerned with an unusual event interrupting or diminishing production, output, or operation. The language of the statute does not refer to an event which only affects the profit-making ability of the corporation without affecting production." *D. L. Auld Co.*, 17 T. C. 1199, 1205.

For all that the record shows, what petitioner produced in the critical year 1947 was normal for it. If we take the fiscal years 1945, 1946, 1948, and 1949, constituting 2 years on each side of the one in question,[3] we find that the average production in tons (the only unit of production available to us) was about 6,410, whereas the production during 1947 was over 6,900. There is no indication here that petitioner's 1947 production was less than normal. The same result follows if we compare the 1947 production with any other years shown by the record, except the fiscal year 1946. But on these figures there is much more reason to believe that that year was above normal than that all the other years were below.[4] And petitioner makes no claim that the production for any other year than 1947 was diminished by the physical events of the changeover.

It is true petitioner submits detailed figures indicating that its profits were lower in 1947 than in other years. This appears to be the result of greater costs of production due to increased material prices and higher labor charges. Under 722 (b) (1) it was incumbent upon a claimant in addition to proof of qualification to show that its base period net income was an inadequate standard of normal earnings. Attempts have sometimes been made to show this by assertions of reduced income. See, e. g., *Triangle Raincoat Co.*, 19 T. C. 548. Such evidence did not under section 722 (b) (1) and certainly does not under section 442 (a) (1) take the place of proof of the basic requisites.

It is not the decrease in profits which determines petitioner's primary eligibility under subsection (1); it is the diminution or interruption of its normal production, output, or operation. *D. L. Auld Co., supra*. This, as we have seen, has not been shown to have been interrupted or reduced below normal.

Without considering other possible defects in petitioner's qualification for relief, and limiting our discussion to section 442 (a) (1), which is the only one under which the claim is made, we conclude that the deficiency was properly determined.

*Decision will be entered for the respondent.*

---

[3] Petitioner's business has been in existence some 50 years, but there are no figures earlier than 1945.

[4] Even in comparison with that year, production during the changeover portion of 1947 was curtailed by only about 2½ per cent.