UNITED STATES STEEL CORPORA-
TION, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 65 Civ. 3043.

United States District Court
S. D. New York.

July 1, 1969.

See also D. C., 305 F.Supp. 508.

White & Case, New York City, for plaintiff; Haliburton Fales 2d, A. Chauncey Newlin, Edmund W. Pavenstedt, Rayner M. Hamilton, Charles A. Corry, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant; Laurence Vogel, Special Asst. U. S. Atty., Alan B. Morrison, Asst. U. S. Atty., of counsel.

## OPINION

### MOTION NO. 2[1]

LEVET, District Judge.

The United States of America, the above-entitled defendant, has moved

1. The defendant's first motion for summary judgment, denying plaintiff's claim for depletion deductions, was granted May 19, 1967, 270 F.Supp. 253 (S.D. N.Y.1967).

under Rule 56 of the Federal Rules of Civil Procedure for summary judgment with respect to the claim of the plaintiff for refund of 1950 excess profits tax payments set forth in paragraphs 9, 10, 11 and 12 of the complaint, dealing with the low quality of coking coal and iron ore.

The relevant claims alleged in the complaint are as follows:

*"Denial of Application of § 442*

"9. Plaintiff duly filed with its consolidated Federal income and excess profits tax return for 1950 a claim that, in determining its excess profits credit, its consolidated 'average base period net income' should be determined in accordance with § 442 of the Internal Revenue Code of 1939.

"10. In determining the Federal income tax for 1950 which Plaintiff has paid, Plaintiff's aforesaid claim for the application of § 442 has been denied.

"11. For 1950, Plaintiff's consolidated 'average base period net income' should have been calculated by reference to § 442 because, within the meaning of § 442(a), during the base period years 1947 and 1948, Plaintiff's normal production was diminished by reason of the occurrence during that period of events unusual and peculiar in the experience of the Plaintiff, and Plaintiff's business was depressed because of temporary economic circumstances unusual in the case of the Plaintiff. Such temporary abnormality was low quality of coking coal and iron ore, resulting in loss of production.

"12. Plaintiff's consolidated 'average base period net income' for 1950 should be computed in accordance with § 442."

The complaint is an action under Section 1346(a) (1) of Title 28 United States Code to recover federal income tax for the year 1950 and assessed interest on additional payments of such tax, which plaintiff claims were erroneously and illegally assessed and collected.

## RELEVANT STATUTE

The relevant statute from the Internal Revenue Code of 1939 is as follows:

"§ 442. *Average base period net income — abnormalities during base period*

"(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period establishes that, for any taxable year within, or beginning or ending within, its base period:

"(1) normal production, output, or operation was interrupted or diminished because of the occurrence, either immediately prior to, or during such taxable year, of *events unusual and peculiar in the experience of such taxpayer,* or [emphasis added]

"(2) the business of the taxpayer was depressed because of *temporary economic circumstances unusual in the case of such taxpayer,* [emphasis added]

the taxpayer's average base period net income [shall be] * * * determined under this section * * *."

## CLAIM OF THE UNITED STATES

The United States contends that the occurrences put forth by the United States Steel Corporation as abnormalities during the base period years of 1947 and 1948 do not qualify as "events unusual and peculiar" or as "temporary economic circumstances unusual" in the case of such taxpayer within the meaning of 26 U.S.C. Excess Profits Taxes, § 442(a) (1) or (a) (2). More specifically, the defendant's contention is as follows: Plaintiff has failed to establish that the shortages of men and materials which delayed development of beneficiating facilities for coking coal and iron ore during 1947 and 1948, and the shortages of steel scrap and coal available for purchase by plaintiff during said years, consisted of more than (1) occurrences affecting business in general; and (2) reasonably-expected competitive pressures.

## THE CONTENTION OF THE PLAINTIFF

The plaintiff, on the other hand, contends that the occurrences cited qualify as abnormalities justifying general relief within the meaning of the statute.

## ISSUE

The issue before the court on this motion for summary judgment involves the excess profits tax provided for by the Internal Revenue Code of 1939 and may be stated as follows:

"Do the war-induced shortages of men and materials which delayed plaintiff's development of beneficiating facilities for coking coal and iron ore during 1947 and 1948, and the shortages of steel scrap and coal available for purchase during said years, constitute 'events unusual and peculiar' or 'temporary economic circumstances unusual' in the case of such taxpayer within the meaning of 26 U.S.C. Excess Profits Taxes, § 442(a) (1) or (a) (2)?"

## FACTS

The following facts are derived from the Joint Rule 9(g) Statement submitted by the parties May 1, 1969:

1. In general, plaintiff has continually developed facilities for removing impurities from iron ore and coking coal as mined. Such beneficiating facilities are employed to the extent necessary to render these two important materials suitable for charging into blast furnaces as part of the overall steel-making process. (§§ 28, 29, Joint Rule 9(g) Statement)

2. During the period 1941 to 1948, plaintiff was unable to maintain normal development and expansion of said facilities because of war-induced shortages of men and materials, particularly engineers and draftsmen, steel, steel fabricated products, electrical equipment and delays by suppliers and subcontractors. (§ 16)

3. During 1947 and 1948, the iron ore and coking coal charged to plaintiff's blast furnaces contained more impurities than in any other relevant year.[2] (§§ 14, 15)

4. During 1947 and 1948, plaintiff's normal production was diminished and its business was depressed due to the high degree of impurities, as mentioned above. The presence of so great a quantity of impurities was the result of the delay in development of beneficiating facilities during 1947 and 1948 because of war-induced shortages of men and materials. (§ 62)

5. The coal available for purchase by plaintiff from independent producers during 1947 and 1948 was less suitable for use in iron and steel production than the coal obtainable in prior or subsequent years. The shortage of acceptable quality coal obtainable by plaintiff during said years was caused by an abnormally high demand coupled with a relatively short supply. The low quality of the coal purchased by plaintiff from independent producers during 1947 and 1948 contributed in part to the low quality of the totality of coal charged to plaintiff's coking ovens and blast furnaces during said years, although the extent of the purchased coal's influence on the low quality of the totality of coal charged cannot be measured from existing records. (§§ 57, 84, 114)

6. The steel scrap available for purchase by plaintiff during 1947 and 1948 was less suitable for use in steel production than the steel scrap obtainable in prior years. (§§ 10, 20)

The plaintiff paid to the District Director of Lower Manhattan, New York City, additional federal income taxes for 1950 with interest. The time for assessment against plaintiff of additional federal income tax for 1950 was extended to June 30, 1966. Plaintiff filed a claim

2. For the purposes of this motion, the parties have stipulated that 1941, 1942, 1943, 1944, 1950, 1951 and 1953 are the relevant years outside the base period. See exhibits attached to Joint Rule 9 (g) Statement.

on June 29, 1965 for refund of federal income tax paid for 1950 and interest thereon, in such amount as may be legally refundable, with interest.

The claim was rejected on August 24, 1965. (Plaintiff's complaint, paragraphs 4–7; defendant's answer, admissions relating to said paragraphs.) The claim for general relief from the excess profits tax payments for 1950 because of low quality coking coal and iron ore constituted part of the claim filed June 29, 1965.

## THE PROPRIETY OF SUMMARY JUDGMENT

It is elementary that summary judgment may be rendered when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.

■ When a motion for summary judgment is made and supported, the adverse party must set forth specific facts or evidentiary data showing that there is a genuine issue for trial. Rule 56(e), F.R.Civ.P., Dressler v. MV Sandpiper, 331 F.2d 130, 133 (2nd Cir. 1964); Scolnick v. Lefkowitz, 329 F.2d 716, 717 (2nd Cir. 1964), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964).

Plaintiff submitted a statement alleging material facts as to which it contended there are genuine issues to be tried. (Plaintiff's statement appended to Joint Rule 9(g) Statement, pp. 20–23.) In response, defendant submitted a statement declaring that each of the material facts set forth by plaintiff had already been admitted by defendant as part of the Joint Rule 9(g) Statement.

(Defendant's letter to the court, May 2, 1969)

Plaintiff asserts that summary judgment on the present motion would be inappropriate for four reasons, each of which, it develops, is insufficient to preclude the entry of such judgment.

First, plaintiff alleges that there exists a disputed material fact as to whether there was any direct correlation between the increased use of mechanical loading devices at plaintiff's coal mines during 1947 and 1948 and the increased content of impurities in the coking coal during said years. (Plaintiff's statement, p. 20)

Second, plaintiff alleges that whether it had any practical or realistic alternative to the increased use of such devices constitutes a material fact in genuine dispute. (Plaintiff's statement, p. 20)

Defendant, in a subsequent response, stated that for the purposes of this motion it was withdrawing its earlier arguments on the use and impact of mechanical loading devices at plaintiff's mines. (Defendant's letter to the court.[3] May 2, 1969, p. 4, referring to defendant's memorandum of law, March 28, 1969, pp. 78–80)[4]

■ Plaintiff continues to maintain that disputed material facts remain as to these issues. (Stenographer's minutes of hearing, June 3, 1969, p. 82). However, in light of defendant's abandonment of its earlier arguments regarding mechanical loading devices, I find that neither of the plaintiff's allegations mentioned above presents a material fact genuinely in dispute.

■■ Third, plaintiff alleges that its "evidence at trial may adduce additional

---

3. On April 25, 1969, the court requested the parties to prepare a Joint Rule 9 (g) Statement and submit supplementary letters, as a further means of clarifying their positions. The Joint 9(g) Statement was submitted May 1, 1969, and plaintiff's and defendant's letters were transmitted to the court on May 1 and May 2, 1969, respectively.

4. Originally, defendant argued (1) that plaintiff increased use of mechanical loading devices during the period from 1941 to 1948; (2) that increased use of the devices contributed to the low quality of coking coal during 1947 and 1948; and (3) that, in effect, loss of production or depression in business for plaintiff was due to an internal management decision to increase use of the devices, rather than to an external causative factor, which would be required in order to qualify for relief under § 442.

events and economic circumstances which diminished its production and depressed its business in 1947 and 1948." (Plaintiff's statement, p. 22)

It is well established, however, that a party opposing a motion for summary judgment is not entitled to rely on the hope of a subsequent magical appearance at trial of genuine issues of material fact. See Fitzgerald v. Westland Marine Corporation, 369 F.2d 499, 500 (2nd Cir. 1966); Engl v. Aetna Life Ins. Co., 139 F.2d 469, 472–473 (2nd Cir. 1943); Erickson v. Said, 42 F.R.D. 170, 173 (S.D.N.Y.1967); Kaz Manufacturing Co. v. Chesebrough-Pond's, Inc., 211 F.Supp. 815, 819–820 (S.D.N.Y. 1962), aff'd, 317 F.2d 679 (2nd Cir. 1963).

■ Fourth, plaintiff alleges that the occurrences giving rise to its claim cannot be understood fully in the absence of testimony from "live witnesses" at trial. (Plaintiff's statement, pp. 22–23.) Where motive, intent and credibility are material issues of fact, particularly in complex antitrust litigation, testimony of live witnesses may be desirable and summary judgment may therefore be inappropriate. See White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Poller v. Columbia Broadcasting System, 368 U.S. 464, 472–473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); see also American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279–280 (2nd Cir. 1967).

■ In the instant case, plaintiff has put forth no specific facts to indicate that any of these factors is relevant to or has any impact upon the material issues for the purposes of this motion, which involve the existence of *external* factors affecting plaintiff's business during 1947 and 1948. The parties agree that certain factors were indeed existent. (See Facts, above). Furthermore, plaintiff has made no suggestion that any material fact has been unavailable to date by reason of being within the movant's exclusive knowledge or control. See 6 Moore's Federal Practice § 56.24, at 2876 (2d ed. 1966).

Accordingly, I conclude that there is no genuine issue as to any material fact.

### THE LAW

#### I.

### BACKGROUND OF THE STATUTE

The Excess Profits Tax Act of 1950, 26 U.S.C. Excess Profits Taxes, § 430 et seq., which is designed to tax at high rates unusually high profits earned during the Korean War, imposes a tax on profits in excess of an amount deemed to represent the taxpayer's normal profits. Jarecki v. G. D. Searle & Co., 367 U.S. 303, 304, 81 S.Ct. 1579, 6 L.Ed. 2d 859 (1961).

■ The object of relief provisions under both the Korean War Act and its predecessor, the World War II Excess Profits Tax Act of 1940, 26 U.S.C. Excess Profits Taxes, § 710 et seq., is to ensure that the finally derived average base period net income should reflect what the taxpayer would have earned in the excess profits tax year (i. e., 1950) but for the war which may have fortuitously increased profits.

■ In furtherance of this objective, actual base period not income which is unrepresentative for a statutorily-defined reason should be replaced by a constructive income. Oxford Paper Company v. Commissioner of Internal Revenue, 302 F.2d 674, 681 (2nd Cir. 1962).

■ Since Sections 442(a) (1) and (a) (2) are essentially identical to Sections 722(b) (1) and (b) (2), their counterparts under the World War II Act, judicial interpretation of the earlier provisions may be utilized to ascertain the meaning of the Korean Act provisions. 7A Mertens, Law of Federal Income Taxation (Zimet & Weiss rev. 1955) § 42.109, at p. 545; see Oxford Paper Company v. Commissioner of Internal Revenue, supra; Fulton Foundry

& Machine Co., Inc., 26 T.C. 953, 956 (1956), aff'd per curiam, 249 F.2d 445 (6th Cir. 1957).

## II.

## BURDEN OF PROOF

■ In order to warrant general relief under the statute, the taxpayer has the burden of establishing a qualifying abnormality which caused its business to be depressed during the relevant base period years of 1947 and 1948.

The Tax Court, in disallowing a petitioner's claim for relief in Alexandria Amusement Corp., 16 T.C. 446, 455 (1951), stated that:

" * * * [S]ection 722 is not a means of extending equitable aid to all taxpayers affected by the excess profits tax. Section 722 affords relief, not on broad equitable principles, but only if certain conditions existed. * * * "

The above statement is as appropriate to the present case as it was to prior cases decided under Section 722, the forerunner of Section 442.

■ Establishment of a specific external qualifying factor is a prerequisite to relief.

## III.

## EXERCISE OF GOVERN-MENTAL POWER

■ The valid exercise of governmental power does not constitute the basis for relief under either Section 442(a) (1) or (a) (2). Seekonk Lace Co., Inc., 24 T.C. 552, 563 (1955); United Motor Coach Co., 22 T.C. 578, 580–581 (1954); see also Del Mar Turf Club, 16 T.C. 749, 763–764 (1951); Alexandria Amusement Corp., supra, 16 T.C. at 456; Acme Breweries, 14 T.C. 1034, 1052 (1950).

■ Accordingly, World War II itself does not qualify either as an unusual and peculiar event or as an unusual temporary economic circumstance within the meaning of the statute. Plaintiff has

acknowledged the inappropriateness of the war as a qualifying factor. (See plaintiff's reply memorandum of law, May 21, 1969, pp. 6, 7)

■ Plaintiff argues that reactions to valid governmental activity may constitute unusual and peculiar events or unusual temporary economic circumstances affording relief. Assuming, arguendo, that such reactions are not automatically barred as abnormalities entitling a taxpayer to relief under the statute, it is, nevertheless, undeniable that specific external qualifying factors must be established by a plaintiff who petitions for such relief.

## IV.

## THE ISSUE UNDER SECTION 442(a) (1)—UNUSUAL AND PECULIAR EVENTS

The intended scope of the statutory term "event" is clearly indicated by Reg. 130 (1939 Code) § 40.442–2(a) (3):

" * * * Unusual and peculiar events contemplated in section 442(a) (1) consist primarily of physical rather than economic events or circumstances. Such physical events include floods, fires, explosions, strikes, and other exceptional and uncommon circumstances hindering production, output, or operation."

Cases under both Sections 722(b) (1) and 442(a) (1) further demonstrate what types of events are contemplated under both the World War II and Korean provisions. Among such cases are New York Shipbuilding Corp. v. United States, 362 F.2d 550, 551 (3rd Cir. 1966) (strike); Oxford Paper Company v. Commissioner of Internal Revenue, 302 F.2d 674, 677 (2nd Cir. 1962) (drought); Burford-Toothaker Tractor Co. v. United States, 262 F.2d 891, 892 (5th Cir. 1959) (strike against major supplier); Schneider's Modern Bakery, Inc., 19 T.C. 763, 772 (1953) (strike); Avey Drilling Machine Co., 16 T.C. 1281, 1292 (1951) (flood); see also 7A Mertens, supra, § 42.119, n. 55 at p. 703, quoting Bulletin on Section 722 of the

Internal Revenue Code (November, 1944), pp. 10–11 (severe freeze or blizzard, a crop blight or epidemic, or a temporary court injunction).

Plaintiff relies on the following illustration which was deemed a qualifying abnormality in the Bulletin on Section 722, supra, at p. 18, quoted in 7A Mertens, supra, § 42.121, n. 42 at p. 726:

> "A brush manufacturing company which normally imports most of its bristles from China suffered an impairment of its business and earnings during the base period *because of the Japanese invasion of China in 1937.* It had to seek elsewhere for its raw material and accept inferior substitutes at higher prices. This interruption of raw material supplies constitutes a temporary economic event affecting the taxpayer and its industry which would be recognized [as a qualifying abnormality]." (Emphasis added)

The situation outlined above is readily distinguishable from the case at hand. The Japanese invasion which occurred during the base period for the World War II statute was a qualifying event. The ensuing shortage which resulted in a depression of the hypothetical taxpayer's business was an effect directly attributable to the invasion itself.

In the instant matter, plaintiff has suggested shortages as abnormalities, without any reference to a further factor as a possible cause of the shortages. It should be noted that the Mertens text describes the qualifying abnormality set forth in the Bulletin as an "interruption in supplies caused by war." 7A Mertens, supra, § 42.121, at p. 726.

■ Plaintiff has set forth no physical event of the type contemplated by the statute, regulations or case law interpretation. I conclude, therefore, that the war-induced shortages of men and materials which delayed development of beneficiating facilities for coking coal and iron ore during 1947 and 1948, and the shortages of steel scrap and coal available for purchase by plaintiff during said years do not constitute qualifying *events* within the meaning of the statute.

Plaintiff has failed to establish that it is entitled to relief under § 442(a) (1).

### V.

### THE ISSUE UNDER SECTION 442 (a) (2)—UNUSUAL TEMPORARY ECONOMIC CIRCUMSTANCES

### (A) WAR-INDUCED SHORTAGES OF MEN AND MATERIALS WHICH DELAYED DEVELOPMENT OF BENEFICIATING FACILITIES DURING 1947 and 1948.

Plaintiff, attempting to establish a qualifying abnormality under Section 442(a) (2), again cites war-induced shortages of men and materials which delayed development of beneficiating facilities during the relevant base period years of 1947 and 1948.

Plaintiff maintains (1) that said shortages were temporary economic circumstances which were unusual in the sense that they did not occur before or after; and (2) that circumstances are not barred from being considered unusual under the statute even though they may also have affected "a large number of people" in addition to the taxpayer. (SM, June 3, 1969, pp. 99, 100, 105).[5]

5. Plaintiff has propounded war-induced shortages of men and materials during *1941 to 1948, inclusive,* as alleged abnormalities which delayed development of "washers" for coking coal and iron ore during *1947 and 1948.*

Shortages which occurred during *1941 to 1945* have been disregarded here as potential qualifying circumstances because they were inextricably intertwined with the United States government's exercise of its war powers during World War II. As previously discussed, the war itself is not a qualifying abnormality.

For the purposes of this motion, the court has considered primarily the postwar shortages occurring during the base

Defendant, on the other hand, contends that the war-induced shortages of men and materials were not unusual because "every single taxpayer in the period was subject to the same kinds of vicissitudes as that * * * (e)verybody wanted to shift from wartime production to peacetime demands." (SM, June 3, 1969, p. 108).

In determining the intended scope of Section 442(a) (2), it is helpful to consider the pertinent regulations for the Korean statute, as follows:

"An event is unusual and peculiar in the experience of the taxpayer if its occurrence is not ordinarily encountered in the taxpayer's business operations. Such event may be unusual in the case of the taxpayer even though it is also unusual in the case of other taxpayers. For example, a flood in a particular locality may be unusual in the case of a number of taxpayers. * * *" Reg. 130 (1939 Code), § 40.442–2(a) (3).

"As in the case of unusual and peculiar events interrupting or diminishing production, output, or operation, a temporary economic circumstance is unusual in the case of a taxpayer if its occurrence is not ordinarily encountered in that taxpayer's business operations. A temporary economic circumstance may be unusual in the case of a taxpayer even though it is also unusual in the case of other taxpayers. * * *" Reg. 130 (1939 Code), § 40.442–2(b) (2).

■ I interpret the regulations to mean that a taxpayer must establish specific circumstances which are unusual in two senses: (1) that they did not occur before or after the relevant base period years; and (2) that they affected only

the immediate taxpayer and a reasonably-limited number of other taxpayers.

Absent such a twofold showing of unusualness, circumstances can only be ascribed to competitive pressures affecting business in general during the years involved.

Responding to questions by the court, plaintiff's counsel acknowledged that the record submitted for the purposes of this motion did not reveal (1) whether plaintiff had experienced prior manpower shortages, or (2) whether other steel producers experienced the same shortages during 1947 and 1948. (SM, June 3, 1969, pp. 101–102). When the court reminded him that the taxpayer had the burden of establishing a qualifying abnormality in order to gain relief, plaintiff's counsel declared that in his opinion the Joint Rule 9(g) Statement and plaintiff's statement appended thereto were "clearly sufficient to bring us within [the statute]." (SM, June 3, 1969, pp. 102, 132). The court is unable to agree that plaintiff has made a showing sufficient to warrant relief.

First, there is no indication in the record on this motion that plaintiff has made any attempt to submit additional specific evidentiary data. Second, it is indisputable that plaintiff has had over twenty years since the shortages occurred to gather and submit any data which it may have determined would be helpful to its cause in the present case. Third, plaintiff presented no detailed statement at the hearing on this motion to contradict defendant's assertion that shortages of men and materials affected almost all businesses in the United States during 1947 and 1948. (See SM, June 3, 1969, pp. 107–135).

period years of 1947 and 1948. It may be suggested that the 1941–1945 shortages, taken together with the 1947–1948 shortages, should be considered *in toto* as forming a pattern of shortages continuing throughout the war years and the post-war period of economic adjustment.

Thus, it may be argued that the 1947–1948 shortages would not qualify as

*temporary* economic circumstances. See Dow Jones & Co., 41 T.C. 102, 128 (1963). However, it is unnecessary to decide this point in view of the court's disposition of the claim on other grounds, i. e., the shortages of men and materials during 1947 and 1948 were not unusual within the meaning of the statute.

I find that the shortages of men and materials suggested by plaintiff do not qualify as unusual temporary economic circumstances within the meaning of Section 442(a) (2). Therefore, plaintiff has failed to sustain its burden with respect to that portion of its claim for relief dealing with said shortages during 1947 and 1948.

(B) SHORTAGES OF STEEL SCRAP OBTAINABLE BY PLAINTIFF DURING 1947 AND 1948.

(C) SHORTAGES OF COAL OBTAINABLE BY PLAINTIFF DURING 1947 AND 1948.

Plaintiff also contends that it is entitled to relief because of shortages of steel scrap and coal available for purchase during 1947 and 1948. Each of these contentions is insubstantial.

As to steel scrap, the amounts purchasable for charging to plaintiff's steel-making furnaces were lower in quality than in any *prior* relevant year, as measured by density and the percentage of contaminants contained in the scrap. Since plaintiff submits no evidence that the quality of the scrap obtainable improved significantly in *subsequent* years, I hold that plaintiff has failed to present a situation that may be characterized as temporary. (See § 10, Joint Rule 9(g) Statement).

As to coal, the amounts purchasable from independent producers for charging to plaintiff's coking ovens and blast furnaces were less suitable during 1947 and 1948 than in prior or subsequent years. The parties stipulate that the unavailability of acceptable quality coal was due to "abnormally high demand coupled with a relatively short supply," and that the low quality of the *coal available for purchase* contributed "in part" to the low quality of the *totality of coal* used by plaintiff during said years. The parties also agree that "the extent of the purchased coal's influence on [the strength of all coal charged to plaintiff's coking ovens and blast furnaces during 1947 and 1948] cannot be measured from existing records." (See §§ 57, 84, 114, Joint Rule 9(g) Statement).

Even if the low quality of purchasable coal did contribute to some unspecified extent to the low quality of the totality of coal used by plaintiff during 1947 and 1948, there is no indication in the record that the abnormally high demand and relatively short supply were caused by more than keen competitive pressures during these years. Such pressures must reasonably be expected by businessmen in the course of their operations. See Interstate Milling Co., 32 T.C. 1038, 1047 (1959).

Plaintiff has not established that any steel scrap or coal shortages during 1947 and 1948 would justify relief under Section 442(a) (2).

CONCLUSION

The following principles defeat plaintiff's claims:

1. The burden is on the taxpayer to establish that its claims of abnormality during the base period years qualify for relief within the meaning of the statute.

2. The factors here consist of no more than (a) occurrences affecting business in general rather than plaintiff and a reasonably-limited number of other taxpayers, or (b) competitive pressures which businessmen must reasonably expect in the course of their operations. These factors do not qualify as "events unusual and peculiar" or "temporary economic circumstances unusual" in the case of such taxpayer under 26 U.S.C. Excess Profits Taxes, § 442(a) (1) or (a) (2).

Consequently, defendant's motion for summary judgment is granted as to the claims in paragraphs 9, 10, 11 and 12 of the complaint relating to the low quality of coking coal and iron ore during 1947 and 1948. No genuine issue exists as to any material fact and the defendant is entitled to judgment as a matter of law.

For the reasons stated in my earlier memorandum dated July 14, 1967, unreported, I decline to insert a direction

for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. See also Gottesman v. General Motors Corporation, 401 F.2d 510, 512 (2nd Cir. 1968); McNellis v. Merchants National Bank and Trust Co. of Syracuse, 385 F.2d 916, 919 (2nd Cir. 1967).

Settle judgment on notice.

