**UNITED STATES STEEL CORPORATION, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 65 Civ. 3043.**

United States District Court
S. D. New York.

July 1, 1969.

See also D.C., 305 F.Supp. 497.

**510**

White & Case, New York City, for plaintiff; Haliburton Fales, 2d, A. Chauncey Newlin, Edmund W. Pavenstedt, Rayner M. Hamilton, ·Charles A. Corry, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, for defendant; Laurence Vogel, Special Asst. U. S. Atty., Alan B. Morrison, Assistant U. S. Atty., of counsel.

## OPINION

### MOTION NO. 3.

LEVET, District Judge.

The United States of America, the above-entitled defendant, has moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment with respect to the claim of the plaintiff for refund of 1950 excess profits tax payments set forth in paragraphs 9, 10, 11 and 12 of the complaint, dealing with cost-price relationships.

The relevant claims alleged in the complaint are as follows:

*"Denial of Application of § 442*

"9. Plaintiff duly filed with its consolidated Federal income and excess profits tax return for 1950 a claim that, in determining its excess profits credit, its consolidated 'average base period net income' should be determined in accordance with § 442 of the Internal Revenue Code of 1939.

"10. In determining the Federal income tax for 1950 which Plaintiff has paid, Plaintiff's aforesaid claim for the application of § 442 has been denied.

"11. For 1950, Plaintiff's consolidated 'average base period net income' should have been calculated by reference to § 442 because, within the meaning of § 442(a), during the base period years 1947 and 1948, Plaintiff's business was depressed because of temporary economic circumstances unusual in the case of the Plaintiff. Such temporary economic circumstances were abnormal cost-price relationships, resulting in the depression of Plaintiff's business and earnings.

"12. Plaintiff's consolidated 'average base period net income' for 1950 should be computed in accordance with § 442."

The complaint is an action under Section 1346(a) (1) of Title 28 United States Code to recover federal income tax for the year 1950 and assessed interest on additional payments of such tax, which plaintiff claims were erroneously and illegally assessed and collected.

## RELEVANT STATUTE

The relevant statute from the Internal Revenue Code of 1939 is as follows:

" § 442. *Average base period net income—abnormalities during base period*

"(a) *In general.* If a taxpayer which commenced business on or before the first day of its base period establishes that, for any taxable year within, or beginning or ending within, its base period:

\* \* \* \* \* \*

"(2) the business of the taxpayer was depressed because of *temporary economic circumstances unusual in the case of such taxpayer,* [emphasis added]

the taxpayer's average base period net income [shall be] \* \* \* determined under this section \* \* \*."

## THE CLAIM OF THE UNITED STATES

The United States contends that the occurrences put forth by the United States Steel Corporation as abnormalities during the base period years of 1947 and 1948 do not qualify as "temporary economic circumstances unusual in the case of such taxpayer" within the meaning of 26 U.S.C. Excess Profits Taxes, § 442(a) (2). More specifically, the defendant's contention is as follows: Plaintiff has failed to establish that the factors which prompted management to forego additional price increases during 1947 and 1948 consisted of more than (1) valid exercise of governmental regulatory authority, and (2) reasonably-expected competitive pressures.

## THE CONTENTION OF THE PLAINTIFF

The plaintiff, on the other hand, contends that the occurrences cited qualify as abnormalities justifying general relief within the meaning of the statute.

## ISSUE

The issue before the court on this motion for summary judgment involves the excess profits tax provided for by the Internal Revenue Code of 1939 and may be stated as follows:

"Do the alleged factors which prompted plaintiff's management to forego price increases beyond those actually made during 1947 and 1948 constitute 'temporary economic circumstances unusual in the case of such taxpayer' within the meaning of 26 U.S.C. Excess Profits Taxes, § 442(a) (2)?"

## FACTS

The following facts are derived from the Joint Rule 9(g) Statement submitted by the parties May 2, 1969:

1. Price controls on all steel products were put into effect by the United States government for the period from April 16, 1941 to November 13, 1946. (§§ 6, 7, Joint Rule 9(g) Statement) In 1947 and 1948, plaintiff raised its prices, as follows, in an effort to improve its profit margin (§ 12):

(1) On August 1, 1947, approximately $5 per ton across the product mix (§ 26);

(2) On January 1, 1948 and February 13, 1948, approximately $3.80 per ton on tinplate, semi-finished tubular products and structurals, and other items (§ 27);

(3) On July 21, 1948, an average of $9.34 per ton on steel products. (§ 31)

On May 1, 1948, plaintiff reduced its prices from $1 to $5 per ton on a variety of steel products. (§ 29)

2. After November 13, 1946 and until at least the end of 1948, the cost of the goods and services purchased by plaintiff and of labor employed by plaintiff rose rapidly and tended to cancel out the effect of plaintiff's price increases. (§ 40)

3. Commencing in the latter half of 1947 and extending through 1948, the officers of plaintiff were aware of governmental pressures, including the possibility of the reimposition of price controls.

4. On July 15, 1947, President Truman requested coal and steel companies to forego price rises. (§ 25) Other factors which prompted plaintiff's management to refrain from further price increases included (1) political pressures; (2) general public opinion; (3) the opinion of commercial interests throughout the country; (4) wage settlements recently made or pending; (5) price increases already made during 1947 and 1948 on steel and other products; (6) the financial impact of such increases on customers; (7) the pressures on customers to hold down their own prices; and (8) anxiety regarding inflation. (§ 44)

5. In 1947 and 1948 plaintiff concluded that it could not as a realistic and practical matter increase prices more quickly or to higher levels than it actually did. (§ 41)

The plaintiff paid to the District Director of Lower Manhattan, New York City, additional federal income taxes for

1950 with interest. The time for assessment against plaintiff of additional federal income tax for 1950 was extended to June 30, 1966. Plaintiff filed a claim on June 29, 1965 for refund of federal income tax paid for 1950 and interest thereon, in such amount as may be legally refundable, with interest.

The claim was rejected on August 24, 1965. (Plaintiff's complaint, paragraphs 4–7; defendant's answer, admissions relating to said paragraphs) The claim for general relief from excess profits tax payments for 1950 because of abnormal cost-price relationships constituted part of the claim filed June 29, 1965.

## THE PROPRIETY OF SUMMARY JUDGMENT

It is elementary that summary judgment may be rendered when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.

 When a motion for summary judgment is made and supported, the adverse party must set forth specific facts or evidentiary data showing that there is a genuine issue for trial. Rule 56(e), F.R.Civ.P.; Dressler v. MV Sandpiper, 331 F.2d 130, 133 (2nd Cir. 1964); Scolnick v. Lefkowitz, 329 F.2d 716, 717 (2nd Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964).

Plaintiff submitted a statement alleging material facts as to which it contended there are genuine issues to be tried. (Plaintiff's statement appended to Joint Rule 9(g) Statement, pp. 9–11) In response, defendant submitted a statement declaring that each of the material facts set forth by plaintiff had already been admitted by defendant as part of the Joint Rule 9(g) Statement. (Defendant's letter to the court, May 6, 1969) [1]

Plaintiff asserts that summary judgment on the present motion would be in-

1. On April 25, 1969, the court requested the parties to prepare a Joint Rule 9(g) Statement and submit supplementary letters, as a further means of clarifying their positions. The Joint Rule 9(g)

Statement was submitted May 2, 1969, and plaintiff's and defendant's letters were transmitted to the court on May 2 and May 6, respectively.

appropriate for three reasons, each of which, it develops, is insufficient to preclude entry of such judgment:

First, plaintiff alleges that whether its management had any alternative whatsoever in making decisions to forego further price increases in 1947 and 1948 is a material fact in dispute.[2]

The parties have already agreed that plaintiff concluded that additional price rises would be unrealistic and impractical (see § 41, Joint Rule 9(g) Statement), but plaintiff maintains, without any further explanation, that a decision to make additional increases would have been "impossible." (Plaintiff's statement appended to Joint Rule 9(g) Statement, p. 9) Defendant states that it cannot accept the term "impossible" because it does not understand the meaning of the term as used. (Defendant's letter to the court, May 6, 1969, p. 2)

■ The material facts for the purposes of this motion involve the existence of *external* factors which may have prompted any decisions by plaintiff to forego further price increases during 1947 and 1948. The parties agree that certain factors were indeed existent and that additional increases by plaintiff would have been unrealistic and impractical. (See Facts, above) An unsupported, conclusory statement by plaintiff that additional increases would have been "impossible" is insufficient to establish a genuine issue as to any material fact.

■ Second, plaintiff alleges that its "evidence at trial may adduce additional economic circumstances which depressed its business in 1947 and 1948." (Plaintiff's statement appended to Joint Rule 9(g) Statement, p. 10)

It is well established, however, that a party opposing a motion for summary judgment is not entitled to rely on the hope of a subsequent magical appearance at trial of genuine issues of material fact. See Fitzgerald v. Westland Marine Corporation, 369 F.2d 499, 500

(2nd Cir. 1966) ; Engl v. Aetna Life Ins. Co., 139 F.2d 469, 472–473 (2nd Cir. 1943); Erickson v. Said, 42 F.R.D. 170, 173 (S.D.N.Y.1967); Kaz Manufacturing Co. v. Chesebrough-Pond's, Inc., 211 F.Supp. 815, 819–820 (S.D.N.Y.1962), aff'd, 317 F.2d 679 (2nd Cir. 1963).

■ Third, plaintiff alleges that the occurrences giving rise to its claim cannot be understood fully in the absence of testimony from "live witnesses" at trial. (Plaintiff's statement appended to Joint Rule 9(g) Statement, p. 11)

Where motive, intent and credibility are material issues of fact, particularly in complex antitrust litigation, testimony of live witnesses may be desirable, and summary judgment may, therefore, be inappropriate. See White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Poller v. Columbia Broadcasting System, 368 U.S. 464, 472–473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); see also American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279–280 (2nd Cir. 1967).

■ Plaintiff, however, has put forth no specific facts to indicate that any of these factors is relevant to or has any impact upon the material issues in the instant case. Furthermore, plaintiff has made no suggestion that any material fact has been unavailable to date by reason of being within the movant's exclusive knowledge or control. See 6 Moore's Federal Practice ¶ 56.24, at 2876 (2d ed. 1966).

Accordingly, I conclude that there is no genuine issue as to any material fact.

## THE LAW

### I.

### BACKGROUND OF THE STATUTE

The Excess Profits Tax Act of 1950, 26 U.S.C. Excess Profits Taxes, § 430

---

**2.** Plaintiff did indeed raise prices on at least three occasions during 1947 and 1948, as previously noted, but the court is here concerned only with decisions to refrain from *further* price increases.

et seq., which is designed to tax at high rates unusually high profits earned during the Korean War, imposes a tax on profits in excess of an amount deemed to represent the taxpayer's normal profits. Jarecki v. G. D. Searle & Co., 367 U.S. 303, 304, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961).

The object of relief provisions under both the Korean War Act and its predecessor, the World War II Excess Profits Tax Act of 1940, 26 U.S.C. Excess Profits Taxes, § 710 et seq., is to ensure that the finally derived average base period net income should reflect what the taxpayer would have earned in the excess profits tax year (i. e., 1950) but for the war which may have fortuitously increased profits.

In furtherance of this objective, actual base period net income which is unrepresentative for a statutorily-defined reason should be replaced by a constructive income. Oxford Paper Company v. Commissioner of Internal Revenue, 302 F.2d 674, 681 (2nd Cir. 1962).

Since Sections 442(a) (1) and (a) (2) are essentially identical to Sections 722(b) (1) and (b) (2), their counterparts under the World War II Act, judicial interpretation of the earlier provisions may be utilized to ascertain the meaning of the Korean Act provisions. 7A Mertens, Law of Federal Income Taxation (Zimet & Weiss rev. 1955) § 42.109, at p. 545; see Oxford Paper Company v. Commissioner of Internal Revenue, supra; Fulton Foundry & Machine Co., 26 T.C. 953, 956 (1956), aff'd per curiam, 249 F.2d 445 (6th Cir. 1957).

## II.

### BURDEN OF PROOF

In order to warrant general relief under the statute, the taxpayer has the burden of establishing a qualifying abnormality which caused its business to be depressed during the relevant base period years of 1947 and 1948.

The Tax Court, in disallowing a petitioner's claim for relief in Alexandria Amusement Corp., 16 T.C. 446, 455 (1951), stated that:

"* * * [S]ection 722 is not a means of extending equitable aid to all taxpayers affected by the excess profits tax. Section 722 affords relief, not on broad equitable principles, but only if certain conditions existed. * * *"

The above statement is as appropriate to the present case as it was to prior cases decided under Section 722, the forerunner of Section 442.

Establishment of a specific external qualifying factor is a prerequisite to relief.

## III.

The case law interpreting the analogous World War II statute, Section 722(b) (2), clearly holds that the valid exercise of governmental regulatory authority affecting the business of the taxpayer may not constitute the basis for relief under the provision, even when governmental actions involve direct impact. Legally-authorized government regulation cannot be reasonably construed as unusual. Seekonk Lace Co., 24 T.C. 552, 563 (1955); United Motor Coach Co., 22 T.C. 578, 580–581 (1954); see also Del Mar Turf Club, 16 T.C. 749, 763–764 (1951); Alexandria Amusement Corp., supra, 16 T.C. at 456; Acme Breweries, 14 T.C. 1034, 1052 (1950).

Accordingly, the imposition of price controls during 1941–1946, President Truman's request to the steel and coal manufacturers on July 15, 1947 to forego further price increases, and the possibility of reimposition of price controls after 1946, are not valid bases for relief as "temporary economic circumstances unusual in the case of such taxpayer" within the meaning of Section 442(a) (2).

The case law under the World War II statute is equally clear in holding that a taxpayer must establish some specific factor or factors beyond the realm of competition in order to qualify for relief. Even keen competition does not afford relief, because its presence

may be reasonably assumed to be common, rather than unusual, in the competitive, free-market economic atmosphere endorsed as part of public policy in the United States. See Interstate Milling Co., 32 T.C. 1038, 1047 (1959); Blue Diamond Coal Co., 31 T.C. 777, 798 (1959), aff'd, 283 F.2d 690 (6th Cir. 1960).

If the taxpayer is unable to isolate particular causative external and unusual temporary economic circumstances, the inference to be drawn is that a depression in its business was due to normal competitive factors. See A. Finkl & Sons Co., 38 T.C. 886, 900 (1962).

There is no probative evidence in the record before this court to indicate that the eight additional factors,[3] put forth by plaintiff as circumstances prompting its management to forego further price increases during 1947 and 1948, consist of more than reasonably-expected competitive pressures. Indeed, the management of every business operating in the American marketplace must ponder the impact of each of the general matters cited.

Plaintiff argues that *reactions* to valid governmental activity may constitute unusual temporary economic circumstances affording relief, citing in support two cases: Dyer Engineers, Inc., 10 T.C. 1265 (1948) and Southern California Edison Co., 19 T.C. 935 (1953). Neither of these cases is helpful to plaintiff here.

In Dyer Engineers, supra, the taxpayer was an industrial engineering firm specializing in the installation of incentive wage systems. During the base period years, immediately after the Wagner Act of 1935 became law, labor unions were antagonistic to the establishment of the taxpayer's systems, as a result of which many corporations were reluctant to contract for their installation. The taxpayer was granted relief because it specifically established that a significant loss of customers due to labor-management dissension had caused a depression of its business.

In Southern California Edison, supra, the taxpayer was an operating public utility which sold electrical energy to municipalities, among others. During the base period years, construction of Boulder Dam, authorized by the United States government, was completed. Three municipalities, which had previously purchased power from the taxpayer, began to purchase it directly from Boulder Dam.

Additionally, during the base period years, the taxpayer sold to the City of Los Angeles, under threat of condemnation, a portion of taxpayer's power distribution system. The transaction resulted in the loss of more than forty thousand customers previously served by Southern California Edison. The taxpayer was granted relief because it specifically established that its business had been depressed by a significant loss of customers due to the use of Boulder Dam as a direct power source and the sale of a portion of taxpayer's distribution system to Los Angeles.

Assuming, arguendo, that reactions to valid governmental activity are not automatically barred as abnormalities entitling a taxpayer to relief under the statute, it is, nevertheless, undeniable that specific external qualifying factors must be established by a plaintiff who petitions for relief.

In both Dyer Engineers and Southern California Edison the loss of customers was properly deemed to be a qualifying factor.

No such qualifying factor has been propounded by plaintiff in the present case.

## CONCLUSION

The following principles defeat plaintiff's claim:

1. The burden is on the taxpayer to establish that its claim of abnormality during the base period years qualifies for relief within the meaning of the statute.

---

3. See Facts, above.

2. The factors here consist of no more than (a) valid exercises of governmental regulatory authority, or (b) competitive pressures which businessmen must reasonably expect in the course of their operations. These factors do not qualify as "temporary economic circumstances unusual in the case of such taxpayer" under 26 U.S.C. Excess Profits Taxes, § 442(a) (2).

Consequently, defendant's motion for summary judgment is granted as to the claim in paragraphs 9, 10, 11 and 12 of the complaint relating to allegedly abnormal cost-price relationships during 1947 and 1948. No genuine issue exists as to any material fact and the defendant is entitled to judgment as a matter of law.

For the reasons stated in my earlier memorandum dated July 14, 1967, unreported, I decline to insert a direction for entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. See also Gottesman v. General Motors Corporation, 401 F.2d 510, 512 (2nd Cir. 1968); McNellis v. Merchants National Bank and Trust Co. of Syracuse, 385 F.2d 916, 919 (2nd Cir. 1967).

Settle judgment on notice.