Daniel A. SWITKES, Petitioner,

v.

Melvin LAIRD, individually and as Secretary of Defense of the United States, and Stanley S. Resor, individually, and as Secretary of the Army of the United States, Respondents.

No. 70 Civ. 2362.

United States District Court,
S. D. New York.

July 2, 1970.

lic Schools, 306 F.Supp. 1388, 1395–1396 (E.D.Mich.1969).

Peter Weiss, Morton Stavis, New York City, for petitioner.

Whitney North Seymour, Jr., U. S. Atty., for respondents; John F. McHugh, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is an application for a writ of habeas corpus (28 U.S.C. §§ 2241, 2242) and a motion for a preliminary injunction (Fed.R.Civ.P. 65).

The factual situation assumed for purpose of decision is made to appear solely from papers submitted by petitioner. For respondents, there is only a memorandum of law.

Petitioner Switkes is a member of the armed services of the United States, a Captain in the Army, a physician whose specialty is psychiatry. He is said to be "under orders to report for shipment to Vietnam and is required to report to Travis Air Force Base at Fairfield, California, for that purpose on June 12, 1970."

The relief sought by this application and motion is the immediate discharge of Switkes from the armed services or, in the alternative, enjoining respondents from compelling him "to go to Indochina."

The application for a writ of habeas corpus must be denied for want of jurisdiction. The motion for a preliminary injunction must be denied for want of sufficient merit.

Switkes registered in 1960 with the Selective Service System, Local Board 41 in Brooklyn. He was then 18 years old. No claim was made to conscientious objector status.

He graduated from Massachusetts Institute of Technology in 1962 and from Albert Einstein Medical School in 1967. He was a member of the "Berry Plan", wherein induction is deferred for persons training as doctors who, after completion of such training, can enter the Army as doctors with the rank of Captain or higher.

Switkes was an intern at Cook County Hospital in Chicago in 1967 and part of 1968.

In November 1967 he resigned from the "Berry Plan" and on December 1, 1967 filed with his Local Board a claim to be a conscientious objector. He and an uncle appeared before the Local Board which on March 26, 1968 denied the claim and stated, among other things, that Switkes "does not sincerely hold the beliefs he sets forth". There was an appeal but the State Appeal Board affirmed the denial by the Local Board of the claim to be a conscientious objector.

For part of 1968 and into 1969 Switkes was a resident in psychiatry at Kings County Hospital in Brooklyn.

He was ordered to report for induction, did so, and on September 17, 1969 was inducted and was then assigned to the Army.

In the first instance, Switkes was sent to Fort Sam Houston in Texas for a basic training course for doctors.

From a time in October 1969 to May 20, 1970 he was assigned to the Mental Hygiene Clinic at Ireland Army Hospital at Fort Knox, Kentucky.

Orders were issued placing Switkes on leave from May 20, 1970 and directing that he report on June 12, 1970 to

Travis Air Force Base at Fairfield, California, for shipment to Vietnam by June 15.

While on leave status, Switkes came to New York where he has his residence and domicile. He has been here to the present time.

On June 1, 1970, Switkes went to the Army Base at Fort Hamilton, New York, and attempted to apply for release from the Army on the ground that he was a conscientious objector. He was advised that while a person (such as he) is between duty assignments he may not apply for release as a conscientious objector but must apply when he arrives at his new duty station.

On June 6, 1970, Switkes filed in this Court a document entitled "Petition for a Writ of Habeas Corpus and Complaint for Injunctive Relief". Apparently this is intended to combine in a single proceeding an application for the ancient writ of habeas corpus and a civil action for a declaratory judgment and for injunctive relief. It would seem that habeas corpus, while a proceeding civil in nature, is by its nature and by its history different from and separate from a civil action. The propriety of the combination here effected seems thus to be questionable as a matter of procedure. For purposes of present decision, however, it is assumed that the combination is appropriate.

The two respondents are, respectively, the Secretary of Defense and the Secretary of the Army.

On June 5, 1970, Switkes obtained from Judge McGohey an order requiring respondents to show cause why a preliminary injunction should not issue. This was before the application for habeas corpus was filed or the civil action commenced. The order to show cause recites that the "petition" was filed on June 5; according to the Clerk's stamp the petition was filed on June 6.

On June 9, 1970, when the order to show cause was returnable, argument was heard. Because of the upcoming June 12 date for Switkes to report in California for shipment to Vietnam, a temporary restraining order was filed, without objection by respondents, restraining defendants from moving the plaintiff, or ordering his presence outside the Southern District of New York, pending determination of the motion. On June 19, 1970, the temporary restraining order was extended for ten days.

### Application for a Writ of Habeas Corpus

The combination petition and complaint begins with a preamble, followed by eleven numbered paragraphs, followed by "Count I" and five other counts, and then a prayer for relief.

Presumably the habeas corpus writ is sought on the basis of everything contained in the combination pleading (see para. 10).

The initial difficulty is that there seems no jurisdiction in this Court to entertain an application by Switkes for habeas corpus.

■■ The writ of habeas corpus is to inquire into the causes of restraint of a person. A district court has jurisdiction to issue the writ and to make such inquiry where the applicant is "confined or restrained" within the territorial limits of its jurisdiction. Ahrens v. Clark, 335 U.S. 188, 190, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); 28 U.S.C. § 2241(a).

■ No superior officer of Switkes is within this district and he is not "confined or restrained" here. When the petition was filed, he was in this district voluntarily and according to the petition (para. 2) was "on leave and authorized to be any place within the United States".

Neither respondent is in this district. The situation seems to be the same as that in United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir.), cert. denied, 396 U.S. 918, 90 S.Ct. 244, 24 L.Ed.2d 197 (1969).

Rudick on March 4, 1969 applied to this Court for habeas corpus. Rudick had left Fort Ord, California, on leave under orders to report on March 9, 1969 at Oakland, California, for shipment to Vietnam. Rudick was a resident of New York. The respondents were the same as those here. The Court of Appeals held that there was no jurisdiction to consider the application. The Court described as "unusual" an argument that Rudick, wherever he might be, was in custody of the Secretary of Defense and of the Secretary of the Army. The Court decided that these officials could not be "found" in this district nor could anyone be found here who could be the commanding officer of Rudick. The Court further held that no one having custody of Rudick was within this district "nor is such person within reach of the District Court's process" (412 F.2d at 21). The conclusion then was that there was no jurisdiction.

■■ While not explicitly stated in the opinion, the Court must have found 28 U.S.C. § 1391(e) inapplicable. That section provides, among other things, that a "civil action" against an "officer" of the United States may "except as otherwise provided by law" be brought in the district where "the plaintiff resides" and delivery of the summons and complaint may be made by certified mail beyond the territorial jurisdiction of the district court. A habeas corpus proceeding is not believed to be a "civil action" as those words are used in 28 U.S.C. § 1391(e). While habeas corpus is often said to be "civil", the Supreme Court has said that this label is "gross and inexact" and that "the proceeding is unique". Harris v. Nelson, 394 U.S. 286, 293–294, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Moreover, the provisions of 28 U.S.C. § 2241 authorizing the district courts to grant the writ "within their respective jurisdictions" would seem to be an instance of "otherwise provided by law" within the meaning of 28 U.S.C. § 1391(e).

In Liberation News Service v. Eastland, 426 F.2d 1379 (2d Cir. 1970), our Court of Appeals said that where applicable Section 1391(e) "would indeed supply both venue * * * and jurisdiction over the persons * * * * ". This was said, however, in the context of an ordinary civil action and did not suggest any change in the *Rudick* result for habeas corpus proceedings.

### Motion for a Preliminary Injunction

There are six separate counts, each based on a different claim, and it will make for better understanding if they are discussed separately.

Jurisdiction of the claims in the civil action is said to rest on the existence of federal questions (28 U.S.C. § 1331) and diversity of citizenship (28 U.S.C. § 1332). The jurisdictional amount is averred and would appear to be present, according to Berk v. Laird, 429 F.2d 302 (2d Cir. 1970).

### Count I

■ The claim here is that induction of Switkes was unlawful because there was "no basis in fact" for classifying him as other than a conscientious objector. 50 App.U.S.C. § 460(b) (3)

The cited statute provides that there shall be no judicial review of local board classification except as a defense to a criminal prosecution. It has been determined (citing from a Senate Report) that Congress did not thereby intend to suspend the writ of habeas corpus as a means after induction to challenge the classification of the local board as without basis in fact. Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 235, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Since the remedy of habeas corpus is available after induction and since before induction the classification may be challenged as a defense in a criminal proceeding, the Supreme Court has found "no constitutional objection" to the limitation of judicial review to these two methods.

A civil action is thus not available to challenge classification after induction. In this instance, a civil action is at-

tempted only as a means of avoiding the jurisdictional necessities of habeas corpus.

## Count II

The claim here is based on the refusal to accept an application from Switkes at Fort Hamilton, New York, for discharge from the Army as a conscientious objector. This claim differs from that in Count I because it need not rest on the existence of conscientious objections before induction; it is a claim to what can be described as "in-service conscientious objector classification". The application was not accepted at Fort Hamilton because Switkes was on leave before reporting to a new duty station. Army Regulation 635–20(6) (a), as amended by Circular 635–17, provides, in pertinent part:

"An individual who has departed his unit of assignment in compliance with reassignment orders may not make application for discharge as a conscientious objector until he arrives at his new permanent duty station".

The argument is that the regulation is unauthorized, or if authorized, is invalid as a denial of due process of law.

■ This argument need not be reached, however, because in any event Switkes did not present his application to his immediate commanding officer, as required by Army Regulation 635–20(4) (a). The purpose of this Regulation is to enable the application to be processed where the applicant's service record is ordinarily located and seems clearly reasonable on that ground. See Hancock v. Laird, 415 F.2d 234 (9th Cir. 1969). There is no reason to suppose that the service record of Switkes could possibly be at Fort Hamilton, with which he has never had any connection.

■ If reached, the argument addressed to Regulation 635–20(6) (a) is not persuasive. When a member of the armed services is between two duty assignments, his service record is in transit between the two stations. An application, such as Switkes attempted to submit at Fort Hamilton, cannot be processed there or at any place other than the new station of Switkes in Vietnam because his service record has been, or is being, sent from Fort Knox to Vietnam. The regulation seems plainly reasonable. See Kimball v. Commandant, 423 F.2d 88 (9th Cir. 1970).

## Count III

The claim here is that, while in the Army, Switkes criticized the manner in which he was required to practice psychiatry; that as punishment for his criticism he has been ordered to Vietnam; and that the order is unlawful because it constitutes "punishment without trial and potential deprivation of life without due process of law".

■ This Court should not exercise any jurisdiction to review such a claim, under the principle laid down in Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Orloff, a psychiatrist who had been inducted into the Army pursuant to the Doctor's Draft Law (64 Stat. 826) applied for a writ of habeas corpus to compel the Army to assign him to medical duties within his specialty and to permit him to administer certain drugs. Orloff claimed that he was being denied a proper assignment solely because he had refused to execute a loyalty certificate. The Supreme Court held that the Doctor's Draft Law dictated a medical assignment for Orloff. The Court held further, however, that denial of the writ to Orloff was proper because particular duty orders to Orloff within the general medical field are not subject to judicial review.

Mr. Justice Jackson wrote for the Court:

"We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army.

The responsibilities for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

" * * * Discrimination is unavoidable in the Army. Some must be assigned to dangerous missions; others find soft spots. Courts are presumably under as great a duty to entertain the complaints of any of the thousands of soldiers as we are to entertain those of Orloff. * * * It is not difficult to see that the exercise of jurisdiction as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." (345 U.S. at 93–95, 73 S.Ct. at 540)

■ Although *Orloff* involved a petition for habeas corpus, the principle that courts have no power to review individual duty assignments applies to suits for injunctive relief as well. See United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir.), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1968).

Plaintiff cites Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970) and Breen v. Selective Service Local Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970), in which the Selective Service "delinquency" regulations (32 CFR § 1642.12 and 1642.13) were held invalid. These cases are inapposite since they concerned the classification of civilians, not the duty assignments of persons already subject to military orders. See Fox v. Brown, 402 F.2d 837, 840 (2d Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969).

## Counts IV and V

These two counts may be considered together.

■ In Count IV, it is claimed that the orders requiring Switkes to report to Vietnam are illegal, because the military actions by the United States in Vietnam and throughout Indochina are being conducted by the President and his agents, without authorization by Congress, in violation of Article I, Section 8 of the Constitution (granting power to the Congress to declare war).

In Count V, it is claimed that the orders to Switkes violate Section 5 of the New York Civil Rights Law. That section provides:

"No citizen of this state can be constrained * * * to arm himself, or to go out of this state * * * without the grant and assent of the people of this state, by their representatives in senate and assembly, except in the cases specially provided for by the Constitution of the United States".

These two claims have recently been considered by our Court of Appeals in Berk v. Laird, above. There, a denial of a preliminary injunction was affirmed; the facts were similar to those in the case at bar.

The Court of Appeals did hold that Berk's claims were justiciable but the Court suggested that the claims would likely raise an "unmanageable political question" (429 F.2d at 306). The Court concluded that "neither the likelihood of success nor the balance of equities inclines so strongly in [Berk's] favor that a preliminary injunction is required" (429 F.2d at 306).

Petitioner Switkes suggests that *Berk* may be distinguished because the Court of Appeals mentioned that Berk, unlike petitioner Switkes, enlisted in the Army, "presumably fully aware of the Vietnam conflict" (429 F.2d at 306). Whatever effect this distinction may be thought to have on the balance of equities, the fact that Switkes is a draftee does not affect the likelihood

that the claims contained in Counts IV and V will be successful.

## Count VI

The claim here is that the war in Indochina is being conducted in violation of the law of the United States and of international law, "as a matter of basic strategy or military tactics". Among the violations of law alleged are: the indiscriminate killing of noncombatants; the use of chemical warfare agents; violations of the rights of prisoners of war; pillage; failure to provide medical care for enemy wounded; saturation bombing of populated areas; impairment or destruction of agricultural land; and destruction of food and medicine. Plaintiff avers that if he is transported to Indochina he will be required to engage in, and become an accomplice to, war crimes. It is averred that there will be "no practical and effective way to raise the question of war crimes in a combat zone."

There is a serious question whether this is an appropriate tribunal to decide whether the United States is committing violations of law in Indochina. Judge Wyzanski appears to have concluded that "a domestic tribunal is entirely unfit to adjudicate the question whether there has been a violation of international law during a war by the very nation which created, manned, and compensated the tribunal seized of the case." United States v. Sisson, 294 F.Supp. 515, 517 (D.Mass. 1968).

There are serious evidentiary problems in judging the conduct of a war fought ten thousand miles from the courthouse. See D'Amato, Gould and Woods, War Crimes and Vietnam: The "Nuremberg Defense" and the Military Service Resister, 57 Calif.L.Rev. 1055, 1069–1073 (1969). It may be noted that the military tribunals established by the victorious allies after the Second World War were explicitly exempted from "technical rules of evidence". 1 Trials Maj. War Crim. 15 (art. 19) (Int'l Mil. Trib. 1947); Int'l Trib. for the Far East, Charter art. 13, cited in D'Amato, et al., supra at 1070 n. 60 and 1072 n. 70. The federal courts have no such exemption from what has been described as the "usual luxuries of evidentiary verification". (*D'Amato*, above at 1070.)

■ These serious issues need not be decided because, even if they were decided in favor of Switkes, he would not be entitled to a preliminary injunction since there is no showing of any damage to him. The damage claimed is that he will become a war criminal. This is so unlikely as to require rejection of his claim. If he were a combat soldier or combat officer, the matter would stand differently. Switkes, however, is a medical officer specializing in psychiatry.

■ If war crimes are being committed in Indochina, not every member of the armed forces there is an accomplice to those crimes. See United States v. Valentine, 288 F.Supp. 957, 987 (D.P.R. 1968); McDougal & Feliciano, Law and Minimum World Public Order 530–534 (1961).

The foregoing contains the finding of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

The application for a writ of habeas corpus is dismissed for want of jurisdiction.

The motion for a preliminary injunction is denied.

The temporary restraining order is continued as a stay until 5 p.m. on Tuesday, July 7, 1970, in order to afford petitioner an opportunity to apply to the Court of Appeals for any further stay.

. So ordered.