Reviewed by the Court.

*Decision will be entered under Rule 50.*

SUSAN JO RUSSELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5595–72. Filed September 19, 1973.

Susan Jo Russell, pro se.
*Brian J. Seery*, for the respondent.

#### OPINION

SIMPSON, *Judge:* The respondent determined a deficiency of $350.42 in the Federal income tax of the petitioner for the year 1970. Because of a concession made by the petitioner, the only issue for decision is whether the petitioner has a constitutional right not to pay a part of her income taxes because the conduct of the United States in Southeast Asia was contrary to her religious convictions or because of her belief that such conduct violated international law.

The petitioner, Susan Jo Russell, is an individual who maintained her legal residence in Philadelphia, Pa., at the time her petition was

---

[37] See also *Estate of Sam E. Broadhead*, T. C. Memo. 1972–195.

filed in this case. She filed her Federal income tax return for the year 1970 with the Mid-Atlantic Service Center, Philadelphia, Pa.

In such return, the petitioner indicated that in protest of the war in Southeast Asia, she was withholding payment of $196.64, the unpaid portion of her reported tax liability for the year 1970. On May 27, 1971, the petitioner filed an amended return and claimed a refund of $133.78, which, together with the unpaid portion, she indicated amounted to 50 percent of her tax liability for 1970. She alleged that since 50 percent of the national budget was allocated for war and the destruction of Southeast Asia, which she believed to be illegal and immoral, she was rechanneling the part of her tax payment attributable to such 50 percent of the budget into organizations which affirm life. The respondent paid such refund but subsequently determined a deficiency, including both the unpaid and refunded amounts of tax.

The petitioner made three allegations of error in her petition. First, she alleged that the "United States has carried out many acts considered to be war crimes under the Geneva (1949) and Hague (1907) Conventions." After enumerating these acts, she claimed that the payment of Federal income taxes would have constituted complicity in the commission of such alleged war crimes under the Nuremberg Principles. The petitioner next stated that she had been brought up in the "Christian Protestant tradition," which holds all human beings equally worthy of love and respect. She claimed that to support financially the actions of the U.S. Government in Vietnam would force her to violate her deepest religious and moral convictions. Finally, the petitioner alleged that because the Federal Government did not allocate funds adequate to meet the needs of the citizens of Philadelphia, she paid an "alternative tax" to a community fund which provided for the common good of the locality.

The respondent denied these allegations in his answer, and at trial, moved for judgment on the pleadings, claiming that the petitioner failed to state a cause of action in her petition. The parties were given leave to file legal briefs, and such briefs have been filed.

Initially, we consider whether in the circumstances of this case, the respondent has properly moved for a judgment on the pleadings. The present Rules of the Tax Court do not expressly provide for judgment on the pleadings,[1] but there is nothing in such rules to prevent such a motion. Such a motion has been granted by this Court in some circumstances. In *John W. Amos*, 43 T.C. 50 (1964), affd. 360 F. 2d 358 (C.A. 4, 1965), there was a motion for judgment on the pleadings in which the facts were established by the pleadings. In *United Motor Coach Co.*, 22 T.C. 578 (1954), the respondent, before filing his answer,

---

[1] Such a motion is expressly authorized by the rules of Court which are to take effect on Jan. 1, 1974. Rule 120, Rules of Practice and Procedure of the United States Tax Court.

moved for a judgment on the pleadings, arguing that the petition failed to state a claim on which relief could be granted by this Court. See also *Clark J. Baker*, 23 T.C. 161 (1954), and *Martin Band Instrument Co.*, 2 B.T.A. 963 (1925), in which the respondent moved to dismiss the petition on the ground that it failed to state a claim on which relief could be granted.

Rule 12(c) of the Federal Rules of Civil Procedure allows a motion for judgment on the pleadings to be made in circumstances such as we have in this case. A judgment on the pleadings may be requested even though the allegations of the complaint have been denied, and for purposes of such motion, such allegations may be deemed to be admitted. Cf. *M. Snower Co.* v. *United States*, 140 F.2d 367 (C.A. 7, 1944). The making of such motion serves to raise the legal issue as to whether the petition states a claim on which relief may be granted, and it may avoid unnecessary trial time and conserve the time of the Court. Accordingly, we hold that such motion is proper.

The gravamen of the respondent's motion is that even if all the allegations of the petition are admitted, for the sole purpose of the motion, such facts merely show that the petitioner's deductions and adjustments from income were due to her beliefs as to the illegality or immorality of the activities of the United States. In reliance upon our decision in *Abraham J. Muste*, 35 T.C. 913 (1961), the respondent requests a decision in his favor as a matter of law.

On the other hand, the petitioner contends that the respondent, in his motion, has admitted that the activities of the United States in Southeast Asia were contrary to international law and that her financial support of such conduct would make her criminally liable for it. She asserts that no court has yet passed on the question of whether in such a situation, a taxpayer is relieved of paying an appropriate portion of her liability for Federal income taxes. She also argues that the activities of the United States were contrary to her religious convictions.

Whether or not the United States has been guilty of illegal conduct is a question of law, and the answer necessarily is a conclusion of law. Here, the petitioner reached such conclusion, alleged it as fact, and now claims that by virtue of the motion made by the respondent, the legal conclusion has been admitted by him to be a fact. Such is not the effect of the respondent's motion. His motion is analogous to a motion made under rule 12(c) of the Federal Rules of Civil Procedure and involves considerations similar to those present in a motion for dismissal under rule 12(b)(6) of such rules. Under both such rules, neither conclusions of law nor unwarranted deductions of fact are deemed admitted for purposes of the motion. *Delaware Valley Conservation Association* v. *Resor*, 392 F. 2d 331, 335 (C.A. 3, 1968); *Pauling* v. *McElroy*, 278 F. 2d 252 (C.A.D.C. 1960); *Rosenhan* v.

*United States*, 131 F. 2d 932 (C.A. 10, 1942), certiorari denied 318 U.S. 790 (1943) ; see generally 2A Moore, Federal Practice, par. 12.08 (with respect to rule 12(b)(6)) and par. 12.15 (with respect to rule 12(c)) (2d ed. 1972). Thus, the material facts deemed admitted for purposes of the motion are that the United States committed the alleged acts, and that the petitioner believes such acts are illegal and in contravention of her religious beliefs.

Although the petitioner's position is not explicit, it seems clear that she intends to raise a constitutional issue. It is apparent that the provisions of the Internal Revenue Code do not give her a right to withhold payment of taxes because of her beliefs. She apparently intends to assert that she has a constitutional right to withhold payment of taxes in the circumstances of this case.

In *Abraham J. Muste, supra*, the taxpayer was opposed to war because of sincere religious and moral convictions and sought to justify his refusal to pay Federal income taxes on the basis of both his religious beliefs and the Nuremberg Principles of complicity with respect to the violation of international law. The Court held that the taxpayer had no constitutional right to withhold the payment of taxes. Initially, the Court held that the first amendment guarantee of religious freedom does not give a religiously motivated individual immunity from the payment of income taxes used in part for war or preparation for war because the payment of such tax does not *directly* restrict the free exercise of an individual's religion. Compare *Murdock* v. *Pennsylvania*, 319 U.S. 105, 112 (1943). The Court then addressed itself to the issue of complicity and stated at 35 T.C. 920:

We are of the opinion that there is no principle of international law which operates to relieve citizens from their tax obligations and liabilities under the laws of their country or which imposes upon them individual responsibility for the use made of tax revenue. * * *

Similar views have been expressed forcefully and emphatically by other courts. In *Autenrieth* v. *Cullen*, 418 F. 2d 586 (C.A. 9, 1969), certiorari denied 397 U.S. 1036 (1970), the taxpayers set forth the same contentions with respect to issues of free exercise of religion and Nuremberg Principles as those put forth by the petitioner here. The Ninth Circuit affirmed a dismissal by the lower court (*Autenrieth* v. *United States*, 279 F. Supp. 156 (N.D. Cal. 1968)) on the grounds that the complaint failed to state a claim upon which relief could be granted and stated at 418 F. 2d 588–589:

Laying aside the question of "standing," we hold that nothing in the Constitution prohibits the Congress from levying a tax upon all persons, regardless of religion, for support of the general government. The fact that some persons may object, on religious grounds, to some of the things that the government does is not a basis upon which they can claim a constitutional right not to pay a part

of the tax. *Kalish* [v. *United States*], * * * [411 F. 2d 606 (C.A. 9, 1969), certiorari denied 396 U.S. 835 (1969) ], is analogous.

The Income Tax Act does not "aid one religion, aid all religions, or prefer one religion over another." Nor does it punish anyone "for entertaining or professing religious beliefs or disbeliefs." (Mr. Justice Black, in Everson v. Board of Education, 1947, 330 U.S. 1, 15–16 * * *) It taxes plaintiffs like all others, because they are citizens or residents who have taxable income. On matters religious, it is neutral. If every citizen could refuse to pay all or part of his taxes because he disapproved of the government's use of the money, on religious grounds, the ability of the government to function could be impaired or even destroyed. See, for example, Crowe v. Commissioner * * *, 8 Cir., 1968, 396 F. 2d 766, where a taxpayer declined to pay his income tax because he objected to being made "to contribute to the welfare of people who made no effort to support themselves." There are few, if any, governmental activities to which some person or group might not object on religious grounds.

In *Farmer* v. *Rountree*, 149 F. Supp. 327 (D. Tenn. 1956), affirmed per curiam 252 F. 2d 490 (C.A. 6, 1958), certiorari denied 357 U.S. 906 (1958), the court, in granting the Government's motion for judgment on the pleadings, dismissed the contention of the taxpayers that the Nuremberg Principles with respect to complicity could inculpate an individual because of his payment of taxes. In so doing, the court stated at 149 F. Supp. 328–329:

But giving the taxpayers the benefit of all factual allegations of their pleadings, whether admitted or denied by the Government, it is apparent that their claims cannot be legally supported and that no amount of proof could give them validity. * * *

  *   *   *   *   *   *   *

To grant taxpayers the relief they seek, the Court would be required to substitute its judgment for that of the other two branches of the Government by declaring that the foreign and military policies of the nation were in reality for illegal and aggressive war and not for the legitimate purpose of national security or for the preservation of the essential interests of the United States. The judiciary not only does not have the proper criteria or the technical competence to make such determinations, but it is without the means of obtaining the varied and complex facts which would be required to draw a conclusion. * * *

No taxpayer or citizen has the right to have the judiciary conduct an inquiry into the military and foreign policies of the United States, or to review or re-examine the appropriations made by Congress for military and defense purposes. The courts have no more authority to sit in judgment upon such discretionary acts and decisions of the executive and legislative departments, after the event, than they would have to restrain them or advise them what to do in the first instance.

Such principles are dispositive of the issues in this case. The requirement that the petitioner bear her fair share of the income tax does not interfere with the right to exercise her religion. Even though the conduct of the United States in Southeast Asia may have been in conflict with her religious views, her disapproval of such conduct for religious reasons does not give her the right to choose not to pay her share of

the income tax. Nor does her belief that such conduct violates international law confer upon her the privilege of not paying a part of such tax. To allow a taxpayer to choose not to pay a tax because of her religious beliefs or her disapproval of the policies of the United States would create chaos and destroy the ability of the Government to raise revenue, to maintain an orderly society, and to assure national security. Although the petitioner argues that this Court has not passed on the effect of the recent conduct of the United States in Southeast Asia or her responsibility as a taxpayer for such conduct, the principles of *Autenrieth* v. *Cullen, supra; Abraham J. Muste*, 35 T.C. 913 (1961) ; and *Farmer* v. *Rountree, supra*, are equally applicable in this case. We need not and do not pass on whether such conduct was violative of international law or whether she is responsible for such conduct. Such issues are not justiciable in the courts when a taxpayer attempts to raise them as a defense for failure to pay his share of general taxes. Finally, the payment of an "alternative tax" to the community has no bearing on the tax liability of the petitioner. It is Congress, not the petitioner, that has been granted the power to tax and to spend for the general welfare, as well as for other purposes, under article I, section 8, of the Constitution.

For these reasons, we hold that the petitioner has failed to state a claim in her petition upon which relief can be granted by this Court.

Reviewed by the Court.

*Decision will be entered for the respondent.*