LORNA H. SCHEIDE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7367-74.    Filed December 2, 1975.

*John David Egnal,* for the petitioner.
*Kenneth G. Gordon* and *Lowell F. Raeder,* for the respondent.

### OPINION

SIMPSON, *Judge:* The Commissioner has made a timely motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure. The only issue raised by this motion is whether the petitioner is entitled to a "war crimes deduction." A hearing was held on the motion on May 12, 1975, and the parties have submitted memorandums of law in support of their positions.

The petitioner, Lorna H. Scheide, claimed a "war crimes deduction" in the amount of $16,344 on her 1972 Federal income tax return. The Commissioner disallowed this deduction, as well as a number of other deductions not before us on this motion, and determined a deficiency of $9,381.62 for such year. The petitioner filed a timely petition with this Court, seeking a redetermination of such deficiency.

The petitioner claims that she has a legal right to refuse to pay the portion of her taxes which she estimates would have been used during 1972 to support the U. S. involvement in Indo-China.

She estimates that, in 1972, one-third of her taxes, computed without the deduction in issue, would have been so used, and she therefore took a deduction in an amount which would reduce her tax liability by one-third. The petitioner argues that payment of such taxes would constitute "complicity" in the commission of war crimes and crimes against peace, allegedly committed by the United States, in violation of Nuremberg Principle No. 7.

The Commissioner argues that as a matter of law, the arguments raised by the petitioner are not justiciable in a tax case, citing *Susan Jo Russell,* 60 T.C. 942 (1973). The petitioner contends that in our opinion in *Russell,* there was no consideration of several recent decisions concerning the principles of standing and justiciability and that in the light of these recent decisions, we should reach a different conclusion. In *Russell,* we dealt with the arguments presented in that case, but in light of these recent decisions, we have reexamined the conclusion and reasoning of that case. Such examination leads us to reaffirm that decision and its holding that a taxpayer does not have standing to raise the issue of alleged international law violations "as a defense for failure to pay his share of general taxes." 60 T.C. at 947.

One aspect of the law of justiciability is standing *(Flast v. Cohen,* 392 U.S. 83, 98 (1968)), which "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Id. at 99. The central question raised by standing is whether the party seeking adjudication of an issue has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination." *Baker v. Carr,* 369 U.S. 186, 204 (1962). The requisite personal stake can be satisfied only if the litigant has sustained a concrete injury or is immediately in danger of sustaining a direct injury. *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 220 (1974).

In *Flast v. Cohen, supra,* the Supreme Court described the circumstances in which a taxpayer qua taxpayer would have the requisite "personal stake" to challenge a Government spending program. The Court therein set forth two requirements for taxpayer standing. The first is that a taxpayer must be challenging a congressional enactment pursuant to article I, section 8, clause 1 of the U. S. Constitution authorizing Congress

to "lay and collect Taxes * * * and provide for the common Defence and general Welfare of the United States." It has been held that the American involvement in Vietnam was not pursuant to the exercise of the general spending power of clause 1, but was pursuant to the exercise of the specific powers "To raise and support Armies" (clause 12) and "To provide and maintain a Navy" (clause 13). *Velvel v. Nixon,* 415 F. 2d 236, 239 (10th Cir. 1969), cert. denied 396 U.S. 1042 (1970); cf. *United States v. Richardson,* 418 U.S. 166, 175 (1974). Consequently, the petitioner fails to meet the first test of *Flast.*

The second requirement of *Flast* is that the "taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power." *Flast v. Cohen,* 392 U.S. at 102-103. Here, the claim is that the United States exceeded its constitutional powers by engaging in alleged violations of international law. Although there is some difficulty in understanding how international law can place a limit on the constitutional powers of the Government,[1] it is quite clear that the petitioner is not claiming, nor could she, that the Government, by its involvement in Vietnam, exceeded any specific constitutional limitation on the taxing and spending power. *Pietsch v. President of United States,* 434 F. 2d 861, 863 (2d Cir. 1970), cert. denied 403 U.S. 920 (1971); *Kalish v. United States,* 411 F. 2d 606, 607 (9th Cir. 1969); *Velvel v. Nixon, supra; Atlee v. Laird,* 339 F. Supp. 1347, 1354 (E.D. Pa. 1972); see *Holtzman v. Schlesinger,* 484 F. 2d 1307, 1315 (2d Cir. 1973). It is simply not sufficient to claim that the congressional enactments with respect to Vietnam are "generally beyond the powers delegated to Congress by Art. I, § 8." *Flast v. Cohen,* 392 U.S. at 103. It follows that a taxpayer, as such, lacks the requisite personal stake in the outcome of controversies involving alleged violations of international law.

The petitioner claims to have a greater personal stake in this litigation than merely that of a taxpayer; she argues that if she pays the deficiency as requested by the Government, she will thereby become a war criminal. If her payment of the taxes

---

[1] Obviously, if the source of international law is a treaty to which we are a party, then subsequent congressional enactments inconsistent with the treaty override it. *The Chinese Exclusion Case,* 130 U.S. 581, 602-603 (1889). It seems clear that the Congress and the executive may, consistent with the Constitution, act in violation of customary international law. See Henkin, Foreign Affairs and the Constitution 171, 214, 220-221 (Norton ed. 1975).

would cause her to become a violator of international law, her stake would seem clearly sufficient to give her standing to raise the issue.[2] However, we conclude that, without a doubt, the petitioner is in no danger of becoming an accomplice to war crimes and hence lacks the requisite personal stake to raise the issue of alleged violations of international law by the United States as a defense to payment of her taxes.

In *John David Egnal,* 65 T.C. 255 (1975), we held that a citizen's payment of taxes does not constitute "complicity" within the meaning of Nuremberg Principle No. 7. In that case, we examined the Nuremberg Principles, in particular Principle No. 7, which makes criminal under international law the complicity in the commission of a crime against peace, in the commission of a war crime, or in the commission of a crime against humanity. There are only two groups of individuals who could possibly violate such international law: the policymakers and soldiers ordered to carry out war crimes. The ordinary soldier, even if he is fighting for a government engaged in an aggressive war, as was the case with Nazi Germany, is not for that reason a war criminal or an accomplice to violations of international law. Such principle was established at Nuremberg beyond all question. *John David Egnal, supra; United States v. Valentine,* 288 F. Supp. 957 (D. P.R. 1968); see also *Levy v. Parker,* 478 F. 2d 772, 797 (3d Cir. 1973), revd. on other grounds 417 U.S. 733 (1974); *Switkes v. Laird,* 316 F. Supp. 358 (S.D.N.Y. 1970); Moore, Law and the Indo-China War 594-595, 597-598 (1972); O'Brien, "Selective Conscientious Objection and International Law," 56 Georgetown L. J. 1080, 1084-1085, 1105-1106, 1126 (1968). The role of a citizen paying taxes to his Government is so much more removed from the war effort, than the role of the ordinary soldiers, that it follows a fortiori that the taxpayer is not criminally liable by such act. *John David Egnal, supra.*

In the light of our conclusion that the petitioner lacks standing, we need not give further consideration to other aspects of the issue of justiciability, nor do we reach the merits of the

---

[2] However, whether such claims would themselves be justiciable or nonjusticiable political questions is a separate issue which we do not address.

controversy. Accordingly, the Commissioner's motion for partial summary judgment will be granted.

*An appropriate order will be issued.*