ROBERT L. ANTHONY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7753-75.     Filed May 27, 1976.

Robert L. Anthony, pro se.
*Lowell F. Raeder,* for the respondent.

OPINION

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioner's 1973 income tax in the amount of $550.44. In his answer to the petition respondent claims an increase in deficiency in the amount of $47.60 for a total deficiency of $598.04. Respondent has determined the entire deficiency by disallowing petitioner's claimed "war crimes" deduction of $3,516.

On December 31, 1975, respondent filed a Motion for Judgment on the Pleadings under Rule 120, Tax Court Rules of Practice and Procedure. We heard the motion on February 23, 1976, and after argument granted respondent's motion from the bench. There is no genuine issue as to any material fact and respondent is entitled to judgment as a matter of law.

Petitioner Robert J. Anthony resided at Moylan, Pa., at the time his petition was filed. He filed his 1973 income tax return with the Internal Revenue Service Center, Philadelphia, Pa.

Petitioner raises two arguments to support his claimed "war crimes" deduction. First, he maintains that payment of his taxes would render him an accomplice in alleged crimes against international law supposedly committed by the United States in Indochina in 1973. Second, he contends that his religious beliefs compel him to withhold payment of his taxes to the United States and that to hold him liable for his taxes would be an abridgment of his religious freedom protected by the first amendment to the United States Constitution.

Respondent argues first that the petitioner has no standing in this Court to raise the issue of his alleged complicity in United States war crimes supposedly perpetrated in violation of international law as a defense to his liability for his 1973 Federal income taxes. We have recently held that taxpayers, such as petitioner, fail to meet the requirements of *Flast v. Cohen,* 392 U.S. 83 (1968), and are in no imminent danger of criminal prosecution for complicity in alleged war crimes, and therefore lack standing to raise the issue that payment of income taxes forces complicity in the alleged violations of international law. *Lorna H. Scheide,* 65 T.C. 455 (1975).

We think our application of the "standing" concept in *Scheide* was firmly grounded on proper policy and case law, and we follow that case here. It is important to delineate here the reasons for

our assumption in *Scheide* that article III "case" or "controversy" limitations apply to this Court.

It is true that we exercise judicial power as a legislative Court. "Standing" is a limitation on the exercise of judicial power that derives both from the "case" or "controversy" restrictions of article III of the United States Constitution and from policy notions of judicial self-restraint.[1] *United States v. Richardson,* 418 U.S. 166, 171 (1974); *Kennedy v. Sampson,* 511 F.2d 430, 433 (D.C. Cir. 1974); *Ashwander v. Valley Authority,* 279 U.S. 288, 346-348 (1935) (Brandeis, *J.,* concurring), cited with approval in *Poe v. Ullman,* 367 U.S. 497, 503 (1961); see *United States v. Richardson, supra* at 196 (Powell, *J.,* concurring). We assumed in *Scheide* that the concept of standing should and does apply to proceedings before this Court notwithstanding the fact that we are a legislative Court established under article I. Sec. 7441.[2]

Legislative courts are not explicitly bound by article III restrictions. *American Insurance Co. v. Canter,* 1 Pet. 511 (1828); *Ex parte Bakelite Corp.,* 279 U.S. 438 (1929); *Williams v. United States,* 289 U.S. 553 (1933); *Glidden Co. v. Zdanok,* 370 U.S. 530 (1962); *Parisi v. Davidson,* 405 U.S. 34, 41 n. 7 (1972). Even though our powers as a legislative Court are prescribed by Congress and do not derive from article III, *Ex parte Bakelite Corp., supra* at 449, nevertheless our powers are solely judicial. *Burns, Stix Friedman & Co.,* 57 T.C. 392 (1971). Likewise our predecessors, the Tax Court of the United States and the United States Board of Tax Appeals, though established under article II, exercised only judicial power. *Fairmont Aluminum Co.,* 22 T.C. 1377, 1384 (1954), affd. 222 F.2d 622 (4th Cir. 1955); *Garden City Feeder Co.,* 27 B.T.A. 1132 (1933), revd. on other grounds 75 F.2d 804 (8th Cir. 1935).

---

[1] Congress recently empowered us to render declaratory judgments in certain narrowly defined situations to determine the qualification of certain retirement plans (sec. 7476). In so doing Congress specifically legislated that we should hear only "actual controversies." Sec. 7476(a); H. Rept. No. 93-779, 93d Cong., 2d Sess. 106 (1974), 1974-3 C.B. 244, 349. To insure that an "actual controversy" exists, Congress imposed a requirement on taxpayers seeking a declaratory judgment under sec. 7476 that prior to the filing of a petition in this Court, the taxpayer must place the plan into effect. Sec. 7476(b)(4); H. Rept. No. 93-779, *supra,* 1974-3 C.B. at 349. Another limitation placed on our exercise of judicial power under sec. 7476 is that we cannot render any judgment until the petitioner has exhausted his administrative remedies within the Internal Revenue Service. Sec. 7476(b)(3).

[2] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

Without a "case" or "controversy" before us, we would be exercising nonjudicial powers,[3] and our opinions would not be reviewable by an article III court. *Postum Cereal Co. v. Calif. Fig Nut Co.,* 272 U.S. 693 (1927); *Brenner v. Manson,* 383 U.S. 519 (1966). Thus, whether as a part of the conceptual formulation of a "case" or "controversy" or as a matter of prudent policy considerations, we think the "standing" doctrine inheres in our exercise of judicial power. Speaking of the decisions of the Board of Tax Appeals, the Supreme Court explained in *Old Colony Tr. Co. v. Commissioner,* 279 U.S. 716, 724 (1929):

> The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the Government, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. *That makes a case or controversy,* and the proper disposition of it is the *exercise of judicial power.* * * * [Emphasis supplied.]

Thus, when exercising judicial power, we are limited to the consideration of real cases and controversies between adverse parties.

The article III "case" or "controversy" formulation serves to define judicial function and power, even if exercised under article I. *Boggess v. Berry Corp.,* 233 F.2d 389, 391 (9th Cir. 1956). Only with respect to administrative or legislative functions and powers is the "case" or "controversy" formulation inapplicable. See *O'Donoghue v. United States,* 289 U.S. 516, 530 (1933); *Williams v. United States,* 289 U.S. 553 (1933).

We think *Pope v. United States,* 323 U.S. 1 (1944), illustrates best the applicability of "case" or "controversy" to the exercise of judicial power by a legislative court also charged with legislative or administrative functions. In *Pope* the Supreme Court considered the judicial function and power of the Court of Claims, then established under article I, in the context of a special act of Congress which had instructed the Court of Claims to render judgment according to the terms of the special act. Regarding the distinction between its judicial functions and its legislative or administrative functions, the Supreme Court stated, 323 U.S. at 12-13:

> We conclude that the effect of the Special Act was to authorize petitioner to invoke the judicial power of the Court of Claims, and that he has done so. It is true that Congress has imposed on that court, as it has on the courts of the

---

[3] None have been given us.

District of Columbia, non-judicial duties of an administrative or legislative character. See *In re Sanborn, supra; Federal Radio Comm'n v. Nelson Bros. Co.,* 289 U.S. 266, 275. Those imposed on the Court of Claims are such as it has traditionally exercised ever since its original organization as a mere agency of Congress to aid it in the performance of its constitutional duty to provide for payment of the debts of the Government. *Such administrative duties coexist with its judicial functions.* See *Ex parte Bakelite Corp., supra,* 452, *et seq. Its decisions rendered in its administrative capacity are not judicial acts, and their review, even though sanctioned by Congress, is not within the appellate jurisdiction of this Court. Gordon v. United States,* 2 Wall. 561; and see the views expressed by Taney, C.J., in 117 U.S. 697; *In re Sanborn, supra.* But notwithstanding the retention of such administrative duties by the Court of Claims, as in the case of the courts of the District of Columbia, *Congress has provided for appellate review of the judgments of both courts rendered in their judicial capacity.* And this Court has held, by an unbroken line of decisions, that its appellate jurisdiction, conferred by Art. III, sec. 2, Cl. 2 of the Constitution, extends to the review of such judgments of the Court of Claims; *De Groot v. United States,* 5 Wall. 419; *United States v. Jones, supra; Nashville, C. & St. L. R. Co. v. Wallace,* 288 U.S. 249, 263; and of the courts of the District of Columbia; *Federal Radio Comm'n v. Nelson Bros. Co., supra,* and cases cited. [Emphasis supplied.]

Although it may seem anomalous that as a Court exercising solely judicial powers, we are established in the legislative department, we are convinced that those elements that define and restrict judicial power, such as "standing," are necessarily applicable to our proceedings. See *Muskrat v. United States,* 219 U.S. 346 (1911). To hold otherwise would be anathema to the division of legislative, administrative, and judicial functions of Government under our Constitution. If in the exercise of judicial power, a legislative court were not bound to adjudicate only real controversies between adverse parties, then delicate questions of constitutional law might be decided and not be reviewable by article III courts. Cf. *Terry C. Rosano,* 46 T.C. 681, 687 (1966). Thus, the Supreme Court was speaking of the nonjudicial functions of the Court of Customs Appeals when it stated in *Ex parte Bakelite Corp.,* 279 U.S. at 460-461:

As it is plain that the Court of Customs Appeals is a legislative and not a constitutional court, there is no need for now inquiring whether the proceeding under section 316 of the Tariff Act of 1922, now pending before it, is a case or controversy within the meaning of section 2 of Article III of the Constitution, for this section applies only to constitutional courts. Even if the proceeding is not such a case or controversy, the Court of Customs Appeals, being a legislative court, may be invested with jurisdiction of it, as is done by section 316.

Moreover, the Tax Reform Act of 1969 left intact the specific congressional intent that appeals of right from our decisions be taken to the U.S. Courts of Appeals which are constitutional courts. S. Rept. No. 91-552, 91st Cong., 1st Sess. 305 (1969), 1969-3 C.B. 616. The decisions of this Court and its predecessors have been exclusively reviewable by the United States Courts of Appeals since the enactment of the Revenue Act of 1926. The committee reports of the House and Senate on the Revenue Act of 1926 are consonant in their expressed purpose to provide appeals of right from the Board of Tax Appeals' decisions. H. Rept. No. 1, 69th Cong., 1st Sess. 19 (1925); S. Rept. No. 52, 69th Cong., 1st Sess. 36 (1926); H. Rept. No. 356, 69th Cong., 1st Sess. 54 (1926). The House Ways and Means Committee Report on the Revenue Act of 1926 contains the following language (H. Rept. No. 1, *supra* at 19): "*Court review—Venue—*Under section 912 of the proposed new law the taxpayer is given the right to obtain a review of the board's decision * * * by the Circuit Court of Appeals of the United States or the Court of Appeals of the District of Columbia."

Both the House Ways and Means and the Senate Finance Committees indicated that "Under the new appellate procedure from the board * * * the jurisdiction of the board in tax matters is similar to that heretofore held by the judges of the Federal district courts." (H. Rept. No. 1, *supra* at 18; S. Rept. No. 52, *supra* at 35.) Moreover, it is clear that Congress viewed the Board's decisions as judicial ones not involving any legislative or administrative determinations. H. Rept. No. 1, *supra* at 20; S. Rept. No. 52, *supra* at 37. Upon constitutional challenge to this appellate procedure, the Supreme Court upheld it, *Old Colony Tr. Co. v. Commissioner, supra.* See generally Dubroff, "The United States Tax Court: An Historical Analysis" (Part III), 40 Albany L. Rev. 253, 260-268 (1976).

In summary, the exercise of judicial power is the "proper disposition" of a "case" or "controversy." See *Radio Commissioner v. General Electric Co.,* 281 U.S. 464, 469 (1930); *Brenner v. Manson,* 383 U.S. 519, 524-525 (1966). "Standing" to sue or to raise an issue is an integral part of the elements of a "case" or "controversy." We exercise solely judicial power and our decisions are appealable to constitutional courts. Thus, the principles of "standing" are applicable to our exercise of judicial power, so that our decisions are appealable by right to a con-

stitutional court as Congress intended. Secs. 7481-7487; cf. *United States v. Coe,* 155 U.S. 76 (1894). We reaffirm our assumption in *Lorna H. Scheide, supra,* that the "standing" doctrine is inherently applicable to our proceedings. See also *John David Egnal,* 65 T.C. 255 (1975).

In *Abraham J. Muste,* 35 T.C. 913 (1961), we disposed of petitioner's second argument. It is clear that the taxing statute does not restrict the free exercise of petitioner's religion and, therefore, it does not run afoul of the first amendment. Cf. *United States v. Malinowski,* 472 F.2d 850 (3d Cir. 1973). As we said in *Susan Jo Russell,* 60 T.C. 942, 946 (1973): "The requirement that the petitioner bear [his] fair share of the income tax does not interfere with the right to exercise [his] religion."

Admitting all the allegations of the petition, respondent is entitled to a decision in his favor as a matter of law.

*Decision will be entered for the respondent.*