PAUL MONSKY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Monsky v. Commissioner
Docket No. 2209-76.
United States Tax Court
T.C. Memo 1977-259; 1977 Tax Ct. Memo LEXIS 180; 36 T.C.M. (CCH) 1046; T.C.M. (RIA) 770259; August 10, 1977, Filed Paul Monsky, pro se. Thomas P. Dougherty, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioner Paul Monsky's individual Federal income taxes for 1973 and 1974 in the respective amounts of $2,134.01 and $6,608. The issues for decision are: 1. Whether petitioner is entitled to deduct $620 for 1973 and $950 [1]/ for 1974 as charitable contributions under section section 170(a)(1). [2]
*182 2. Whether the petitioner is entitled to "War Crimes" deductions of $10,000 for 1973 and $22,000 for 1974. 3. Whether the petitioner is entitled to home office expense deductions of $400 for both 1973 and 1974 under section 162(a). FINDINGS OF FACT At the time his petition was filed, petitioner was a legal resident of Cambridge, Massachusetts. For the years 1973 and 1974 petitioner filed individual Federal income tax returns with the Internal Revenue Service, Boston, Massachusetts. 1. Charitable Contributions
On his individual Federal income tax returns for 1973 and 1974, petitioner claimed charitable contributions as follows: 1973
1974
Central Committee for Conscientious
Objectors $100 $150
War Resisters League
175
300
Clergy and Laity Concerned
150
100
Committee for Nonviolent Action
50
50
War Tax Resistance
75
200
Jane Kennedy Defense Fund
50
Committee for Military Justice
35
United States Servicemen's Fund
25
25
Safe Return (or Atom, Incorporated)
100
Indochina Resource Center
50
Tiger Cage Vigil
50
Scientists and Engineers Emigration Fund
25
Warehouse Cooperative School
50
Warwick House
25
National Sharecroppers Fund Incorporated
50
Prison Law Collective
25
Movement for a New Society
25
Martha Tranquilli Defense Fund
50
Vietnam Resource Center
25
WIN
125
Attica Legal Defense Fund
25
United Farm Workers
50 $875
$1,285
*183 Respondent in his notice of deficiency disallowed charitable contribution deductions of $720 for 1973 and $1,285 for 1974. At the trial or subsequently, respondent conceded that the following contributions were made to qualifying organizations and, therefore were proper deductions. 1973
1974
Central Committee for Conscientious
Objectors $100 $150
Committee for Military Justice
35
Warehouse Cooperative School
50
Warwick House
25
Prison Law Collective
25
Scientists and Engineers Emigration Fund
25
National Sharecroppers Fund
Incorporated
50 $100 $360
As to the other organizations, War Resisters League, Clergy and Laity Concerned, and Committee for Nonviolent Action and Movement for a New Society were pacifist organizations which during 1973 and 1974 worked, generally through mass protest, in opposition to the war in Southeast Asia. War Tax Resistance was an organization established for the dual purpose of giving support to war tax resisters and encouraging setting up alternative funds rather than paying for the war in Southeast Asia. Jane Kennedy Defense Fund was a fund set up to provide for the legal defense of Jane *184 Kennedy in her trial for destruction of draft records. United States Servicemen's Fund was an organization of servicemen which attempted both to influence the conduct of the Vietnam war and to change the military services into organizations more responsive to their individual members. Safe Return (or Atom, Incorporated) was an organization which worked for a general amnesty of Vietnam war military deserters and draft evaders. Indochina Resource Center was an organization which each month published a newsletter on Indochina. Tiger Cage Vigil was an organization which maintained on the steps of the Capitol a replica of a prison cell allegedly used by the Thieu government against dissenters. Martha Tranquilli Defense Fund was a fund set up to provide for the legal defense of Martha Tranquilli in her trial for her refusal to pay taxes which would be used for war. Vietnam Resource Center was an organization which published an Indochina newsletter devoted to ending the war in Southeast Asia. WIN was an organization which published a magazine promoting several political viewpoints. Attica Legal Defense Fund provided representation to the inmates charged with crimes in the aftermath *185 of the Attica, New York, prison riots. United Farm Workers was an organization which worked for the unionization of the field workers in the southwestern part of the United States. 2. "War Crimes" Deductions
Petitioner in his 1973 and 1974 individual Federal income tax returns claimed "War Crime" deductions of $10,000 and $22,000, respectively. Petitioner believed that the United States performed many acts in Indo china which were criminal in that they went beyond waging warfare. He believed the United States illegally bombed civilians and maintained a system of prisons in which people were illegally held. He also believed that taxes collected to finance these activities were unauthorized. In order to avoid paying taxes which he believed to be unauthorized, petitioner claimed "War Crimes" deductions for 1973 and 1974 in amounts sufficient to eliminate all his taxable income. Respondent disallowed the deductions in their entirety. 3. Home Office Deduction
During 1973 and 1974 petitioner was a professor of mathematics at Brandeis University in Waltham, Massachusetts. Evening public transportation between Brandeis and petitioner's home in Cambridge was slow *186 and infrequent. It usually took him approximately one and one-half hours to travel the seven miles from the University to his home. In addition, public transportation was not available late in the evening. Petitioner did not own an automobile. Although housing was available in the Brandeis University area and living in that area would have eliminated any commuting difficulty, petitioner chose to live in Cambridge in order to be near his sister and her family. In addition to his classroom work, petitioner had responsibilities for meeting with students, supervising student research, advising students, preparing for class presentations, correcting tests and assignments, and undertaking personal research.Although the time spent fulfilling his obligations varied from 15 to 30 hours per week, petitioner estimated that class preparation alone took 15 hours per week. Although it was not required or suggested by the University, he did his class preparation, as well as test and assignment grading, and his personal research, at his home. Petitioner used a private office provided him at the University for meeting with and advising students. This office was assigned to petitioner for *187 his exclusive use. Although the office was located in a building which usually was locked at night, petitioner had a key to the building. For 1973 and 1974, petitioner's annual apartment rental was $1,200. Petitioner claimed one-third of this amount as a home office deduction for each of those years. Approximately one-third of the space in petitioner's one-room apartment was occupied by a desk and bookcase in which he stored the materials and books he used in connection with his teaching duties at Brandeis University. During the school term, the desk was used mostly for duties relating to petitioner's job; however, he also used the desk for an undetermined amount of time for personal matters. Petitioner did not teach during the sumer months. Respondent in his notice of deficiency disallowed the entire $400 home office deductions for both 1973 and 1974. OPINION 1. Charitable Contributions
Section 170(a)(1) allows as a deduction any "charitable contribution." Section 170(c), insofar as it is here pertinent, defines the term "charitable contribution" to mean a contribution or gift to or for the use of a corporation, trust, fund or foundation "organized and operated *188 exclusively for religious, charitable, scientific, literary or educational purposes" which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation. Respondent contends that the contributions remaining in dispute were made to organizations which were not within the ambit of this definition. We agree. Our findings with respect to each of the disputed organizations reflect petitioner's testimony as to their activities. But his testimony was cast in general terms. He could testify only as to his understanding of the purposes of those organizations, and even his testimony indicates most of the organizations were heavily involved in political activities designed to influence this country's Vietnam war policy, or to provide funds for persons charged with various crimes, or to assist in the unionization of farm workers. Petitioner's testimony simply was not sufficient to establish that the organizations in dispute were organized and operated exclusively for one or more of the purposes specified in section 170(c). 2. "War Crimes" Deductions
Respondent disallowed petitioner's "War Crimes" deductions of $10,000 and $22,000 *189 for 1973 and 1974, respectively, on the ground that no provision in the Internal Revenue Code authorizes any such deduction. We sustain that disallowance. Petitioner's sincerity in his disagreement with this country's policies in Southeast Asia during 1973 and 1974 cannot be doubted. However, a taxpayer's disagreement, however sincere, with governmental policy does not relieve him of the obligation to render his taxes as determined under existing tax laws, whether that disagreement is based on moral grounds or any other one of a host of previously litigated positions. See e.g., United States v. Malinowski,472 F.2d 850, 857 (3d Cir. 1973), cert. denied 411 U.S. 970 (1973); Autenrieth v. Cullen,418 F.2d 586 (9th Cir. 1969), cert. denied 397 U.S. 1036 (1970); Crowe v. Commissioner,396 F.2d 766 (8th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Scheide v. Commissioner,65 T.C. 455 (1975); Russell v. Commissioner,60 T.C. 942 (1973); Muste v. Commissioner,35 T.C. 913 (1961). We must follow this host of decisions dealing with this *190 issue. 3. Home Office Deductions
Petitioner deducted $400 as a home office business expense under section 162(a) in each of the years 1973 and 1974. In his notice of deficiency, respondent disallowed the deductions for both years on the grounds that there was no showing that the deductions were "ordinary and necessary expenses paid or incurred during the taxable years in carrying on any trade or business" as required by section 162(a). Rather the expenses were considered nondeductible personal expenses falling within section 262. We agree. As pointed out by the Supreme Court in Commissioner v. Idaho Power Co.,418 U.S. 1, 17 (1974), provisions in part IX of subchapter B take precedence over the provisions in part VI of subchapter B. Section 262, falling within part IX, therefore, excepts expenses which might otherwise be deductible under section 162, a part VI provision. Petitioner therefore has the burden of proving that the claimed deduction was not a personal living expense falling within section 262. Income Tax Regulations, section 1.262-1(b)(3) provides: Expenses of maintaining a household, including amounts paid for rent, water, utilities, *191 domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense. Even though petitioner established that he used his apartment for duties relating to his teaching position, he has failed to establish that his home was a place of business. In Sharon v. Commissioner,66 T.C. 515, 524 (1976), on appeal (9th Cir., Dec. 20, 1976), this Court held that the taxpayer, an attorney working for the Internal Revenue Service, who used his home office for a maximum of approximately 15 to 20 hours per week, failed to prove that the claimed home office deductions were not essentially personal. As the Court pointed out, the term "necessary" as used in section 162(a) has been interpreted to mean "appropriate and helpful" in "the development of the petitioner's business." Welch v. Helvering,290 U.S. 111, 113 (1933). *192 But the "appropriate and helpful" test * * * requires a weighing and balancing of all the facts so that they may be given the proper order of importance, bearing in mind the precedence of section 262, which denies deductions for personal expenses, over section 162, which allows deductions for business expenses. Sharon,supra at 524. See also Bodzin v. Commissioner,509 F.2d 679 (4th Cir. 1975), revg. 60 T.C. 820 (1973), cert. denied 423 U.S. 825 (1975). Petitioner took his work home with him for personal reasons. He was not required or encouraged by Brandeis University to work at home. Also unlike the situations in Peiss v. Commissioner,40 T.C. 78 (1963) and Rev. Rul. 64-272, 1964-2 C.B. 55, his apartment was not better suited for his purposes than the private office provided him by the University. His office was available to him at most times for his use in class preparation and for personal research as well as for meeting with students. See Meehan v. Commissioner,66 T.C. 794, 806 (1976), on appeal (3d Cir. Nov. 11, 1976). Petitioner contends that the long *193 commuting time caused by a late departure from the University necessitated the use of his apartment for business purposes. However, suitable housing was available in the Brandeis University area. Petitioner chose to live 7 miles away in Cambridge so as to be near his sister and her family. Cf. Commissioner v. Flowers,326 U.S. 465, 473 (1946); United States v. Tauferner,407 F.2d 243, 246 (10th Cir. 1969). Personal convenience is not a ground for allowing a deduction under section 162(a). Cf. Sharon v. Commissioner,supra at 523. In addition, petitioner has not established that he incurred any additional expense because he chose to work at home. Petitioner used only a part of his one-room apartment in which to do his work. He also used that same part of his apartment to handle personal matters. He did not rent any additional space for office purposes. Cf. Fausner v. Commissioner,413 U.S. 838, 839 (1973). In light of all these facts, the claimed $400 deductions for home office expenses for 1973 and 1974 must be disallowed. To reflect the concessions of the parties, Decision will be entered *194 under Rule 155. Footnotes
1. / Respondent's notice of deficiency dated December 18, 1975, disallowed deductions of $720 for 1973 and $1,285 for 1974. Respondent at trial conceded that, of those contributions originally disallowed, contributions of $100 in 1973 and $335 in 1974 are allowable. Therefore, the charitable contribution deductions still in issue are $620 for 1973 and $950 for 1974. Although respondent in his notice of deficiency disallowed deductions of $720 for 1973, petitioner in his petition filed March 15, 1976, stated that contributions actually made to those organizations to which respondent takes issue totaled $875. ↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.↩